UNITED OF OMAHA, Appellant–
Third Party Defendant,

v.

William HIEBER, Dennis Hieber, Donald
Hieber, Individually and as a farm part-
nership, and Kevin Hieber, Appellees–
Defendants and Third Party Plaintiffs,

and

Nathan Hammond, by his parent and next
friend, Marjorie Hammond, Kasey Ham-
mond, by her parent and next friend,
Marjorie Hammond, and Marjorie Ham-
mond, Appellees–Plaintiffs,

and

United Farm Bureau Mutual Insurance
Company, Appellee–Intervenor and
Third Party Plaintiff.

No. 02A03–9409–CV–337.

Court of Appeals of Indiana.

June 19, 1995.

Rehearing Denied Dec. 12, 1995
and Dec. 15, 1995.

Thomas W. Yoder, Fort Wayne, for appellant.

Leonard E. Eilbacher, Brian L. England, Fort Wayne, for appellees.

## OPINION

GARRARD, Judge.

United of Omaha (Omaha) appeals certain pretrial orders and the summary judgment entered against it in a declaratory judgment action to determine the enforceability of Omaha's subrogation clause in a group health insurance policy.

## FACTS AND PROCEDURAL HISTORY

On May 24, 1990, Marjorie Hammond was operating a motor vehicle in which her children, Nathan and Kasey, were passengers. She swerved in order to avoid a farm vehicle driven by Kevin Hieber and lost control of her vehicle. Nathan sustained serious injuries as a result of the accident.

Steven Hammond, Nathan's father, had a group health insurance policy issued by Omaha through Local # 414 Teamsters Health and Welfare Fund and Food Marketing Corporation. Under the policy, Omaha paid approximately $328,924.46 for medical and hospital expenses related to Nathan's injuries. Pursuant to the requirements of the Employee Retirement Income Security Act (ERISA),[1] Omaha issued a summary plan description (summary) to all participants. The summary contained the following provision:

---

1. 29 U.S.C. § 1021(a). The parties do not dispute that the insurance policy at issue is governed by ERISA.

## SUBROGATION

In the event that payment is made by the Plan for services or charges which are eligible for payment by another source, the Plan shall have the right to recover any payments which were or became duplicate payments.

(R. 344). The actual policy issued by Omaha included a more extensive subrogation clause specifically referring to its right to recover policy payments from the proceeds of any settlement or judgment obtained against a negligent third party; however, the policy was not distributed to plan members.

Marjorie Hammond, on behalf of herself and her children, filed a lawsuit against Hieber[2] on May 21, 1992. Omaha notified Hieber and his liability insurer, United Farm Bureau Mutual Insurance Company (Farm Bureau), of its subrogation claim. The Hammonds' attorney was initially hired by Omaha to pursue its subrogation claim in connection with his representation of the Hammonds, but his employment for Omaha was terminated in June of 1993.

In response to Hieber's nonparty request for production of documents, Omaha provided the summary of its group policy. Based upon Hieber and Farm Bureau's opinion that the summary did not provide Omaha with a right of subrogation in any third-party tort recovery by Nathan, Hieber filed a third-party complaint for declaratory judgment against Omaha on May 19, 1993, seeking a judgment that Omaha had no subrogation interest in any sums recovered by Nathan in this action. In its answer, Omaha pled the affirmative defenses of lack of subject matter jurisdiction, failure to state a claim upon which relief could be granted, and lack of standing on the part of Hieber. Omaha then filed a motion to dismiss based upon these same contentions, which was overruled by the trial court.

Within two months after the filing of the declaratory judgment action, the trial court *sua sponte* ordered Hieber to replead para-

---

2. Also named in the lawsuit were William Hieber, Dennis Hieber, and Donald Hieber, individually and as a farm partnership, in addition to Kevin Hieber. We shall refer to them collectively as "Hieber".

graphs four and five of his complaint. Paragraph four of Hieber's complaint stated:

> Third-party plaintiffs claim that these defendants [Omaha] are within the aforesaid contractual provision, as "another source," from which said medical and hospital expenses are "eligible for payment."

(R. 84). The trial court concluded that, since this paragraph could have the effect of stipulating Hieber's case away, it must have been the result of an inadvertent error in pleading.

The Hammonds and Hieber reached a settlement on November 5, 1993. As a part of the settlement, the Hammonds assigned to Hieber and Farm Bureau all rights to contest and litigate Omaha's subrogation claim, and Hieber and Farm Bureau agreed to indemnify the Hammonds against any potential liability resulting from the subrogation claim. On November 10, 1993, the court granted Farm Bureau's motion to intervene in the declaratory judgment action, again over Omaha's objection.

Hieber and Farm Bureau filed a motion for summary judgment, which the trial court granted on May 18, 1994. The court concluded that under its insurance summary Omaha had failed to preserve a right of subrogation against a recovery from a third-party tortfeasor.

## ISSUES AND DISCUSSION

Omaha raises several issues for our review:

I.  Whether the court erred in denying Omaha's motion to dismiss the declaratory judgment action.

II.  Whether the court erred in ordering that paragraphs four and five of the complaint for declaratory judgment be repled.

III.  Whether the court erred in permitting Farm Bureau to intervene in the declaratory judgment action.

IV.  Whether the court erred in granting Hieber and Farm Bureau's motion for summary judgment.

### ISSUE I

■ Omaha first contends that it was improperly made a party to this case.[3] We disagree.

Ind.Trial Rule 20 governs the permissive joinder of parties:

(A) Permissive Joinder

(1) All persons may join in one [1] action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action.

(2) All persons may be joined in one [1] action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of, or arising out of, the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities. Unwilling plaintiffs who could join under this rule may be joined by a plaintiff as defendants, and *the defendant may make any persons who could be joined under this rule parties by alleging their interest therein with a prayer that their rights in*

---

**3.** Omaha appears to contend that the trial court lacked subject matter jurisdiction. Our supreme court recently spoke to this issue:

> [Subject matter jurisdiction] refers only to the power of a court to hear and decide a particular class of cases. The only relevant inquiry in determining whether any court has ... subject matter jurisdiction is to ask whether the kind of claim which the plaintiff advances ,falls

within the general scope of the authority conferred upon such court by the constitution or by statute.

*Pivarnik v. Northern Indiana Public Service Co.* (1994), Ind., 636 N.E.2d 131, 137 (citations omitted). Omaha does not contend that the trial court lacked the power to hear this kind of case; thus, subject matter jurisdiction is not at issue.

*the controversy be determined, along with any counterclaim or cross-claim against them, if any, as if they had been originally joined as parties.*

T.R. 20(A) (emphasis added).

■ The purpose of T.R. 20(A) is to promote trial convenience, expedite claims, and avoid multiple lawsuits. *McCoy v. Like* (1987), Ind.App., 511 N.E.2d 501, 503, *reh'g denied, trans. denied.* To accomplish these ends, Indiana courts give T.R. 20(A) the broadest possible reading, especially in light of T.R. 20(B) and T.R. 42(B), which allow for separate trials after all parties have been joined. *Id.* at 504. The determination of whether joinder should be granted rests within the trial court's discretion. We will reverse only for an abuse of that discretion. *Id.*

We find *Pivarnik v. Northern Indiana Public Service Co.* (1994), Ind., 636 N.E.2d 131 to be instructive in our resolution of this issue. In that case, a bulldozer owned by GVK Corporation and operated by Robert Cauffman hit a NIPSCO pipeline. GVK had been hired by the owners of the property, Daniel and Edward Pivarnik, to dig a pond. GVK initially brought suit against NIPSCO, and NIPSCO filed a third-party complaint against Cauffman and the Pivarniks. The court concluded that Cauffman and the Pivarniks were proper parties under Trial Rule 20. Cauffman and the Pivarniks had both brought separate actions against NIPSCO, and the supreme court concluded that they clearly could have joined with GVK as plaintiffs in the original lawsuit against NIPSCO, as their claims against NIPSCO arose out of the same occurrence and common questions of both fact and law existed. Thus, because the Pivarniks and Cauffman could have joined as plaintiffs with GVK under T.R. 20(A)(1), GVK could have itself joined the Pivarniks and Cauffman as unwilling plaintiffs. T.R. 20(A)(2); *Id.* at 139. Therefore, as the Pivarniks and Cauffman could have been joined under Trial Rule 20, defendant NIPSCO had the right under the rule to seek joinder of these parties by alleging their interest in the lawsuit and by asking that the court determine that interest. *Id.*

In the case before us, Omaha could have joined the lawsuit as a plaintiff with the Hammonds, because its alleged subrogation claim arose from the accident and there existed common questions of fact and law, as both Nathan and Omaha's right to recovery depended on the determination of Hieber's fault. Thus, as in *Pivarnik*, the Hammonds could have joined Omaha as an unwilling plaintiff. Consequently, Hieber had the right to seek joinder of Omaha by alleging Omaha's interest in the lawsuit and asking that the court determine that issue. While Hieber characterized this request as a third-party complaint for declaratory judgment, this was, in substance, a request for the court to determine Omaha's interest in the lawsuit.

■ In any event, even if joinder were not proper under T.R. 20(A), a motion to dismiss is not the proper remedy. T.R. 21(A); *McCoy*, 511 N.E.2d at 506. A motion to sever the declaratory judgment action would have been appropriate, and, in fact, Hieber filed a motion for a separate trial. *Id.* The trial court did not abuse its discretion in permitting the declaratory judgment action against Omaha.

## ISSUE II

■ Omaha next contends that the trial court erred in permitting Hieber to amend the declaratory judgment complaint.

■ Trial Rule 15(A) provides that a party may amend its pleading by leave of court, and leave shall be given when justice so requires. Amendments should be liberally allowed under Trial Rule 15(A), while giving proper regard for any prejudice to the nonmoving party. *Templin v. Fobes* (1993), Ind., 617 N.E.2d 541, 543. The trial court has broad discretion in deciding whether to permit amendments to pleadings, and we will reverse only upon a showing of abuse of that discretion. *Lilge v. Russell's Trailer Repair, Inc.* (1991), Ind.App., 565 N.E.2d 1146, 1151. Among the factors which a trial court may consider are undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of amendment. *Id.*

Here, the trial court concluded that Hieber's complaint contained an inadvertent error, because the paragraph as written undercut the essence of his complaint. There was no evidence of undue delay or bad faith on the part of Hieber; in fact, the court's *sua sponte* order to replead paragraphs four and five of the complaint came within two months after it had been filed. Although Omaha claims it was prejudiced by the removal of a valuable admission, it has not alleged any action taken in reliance upon the original complaint. Omaha was merely denied the opportunity to take advantage of an error in pleading which was timely corrected in the interest of justice. Such action does not constitute prejudice, and we find no error in the trial court allowing Hieber to amend his complaint.

### ISSUE III

■ Omaha next contends that the trial court erred in permitting Farm Bureau to intervene in the declaratory judgment action. Again, we find no error.

■ Farm Bureau did not designate its motion to intervene as one for intervention of right; thus, we shall review the court's decision as one of permissive intervention. Trial Rule 24(B) provides that anyone may be permitted to intervene in an action when the applicant's claim or defense and the main action have a question of law or fact in common. The court, in exercising its discretion, shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. T.R. 24(B)(2); *Developmental Disabilities Residential Facilities Council v. Metropolitan Development Commission of Marion County* (1983), Ind.App., 455 N.E.2d 960, 965. The trial court's determination on a motion to intervene is reviewed for an abuse of discretion. *State ex rel. Prosser v. Indiana Waste Systems, Inc.* (1992), Ind. App., 603 N.E.2d 181, 187. In reviewing the trial court's exercise of its discretion, the facts alleged in the motion must be taken as true. *Id.* The decision on a motion to intervene turns on the sufficiency of the claim asserted. *Id.*

Here, Farm Bureau based its motion to intervene upon the assignment of Nathan's right to challenge the subrogation claim of Omaha and upon the agreement to indemnify and hold harmless Nathan from any liability as a result of the subrogation claim. Taking these facts as true, Farm Bureau's claim clearly had questions of fact and law in common with the declaratory judgment action. Further, Omaha has failed to demonstrate how it was prejudiced by Farm Bureau's intervention. We find no abuse of discretion.

### ISSUE IV

■ Finally, we address Omaha's claim that the trial court erroneously entered summary judgment in favor of Hieber and Farm Bureau.

■ Summary judgment is appropriate only when the designated evidentiary matter shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). The moving party has the burden of meeting this standard. *Adams v. Inland Steel Co.* (1993), Ind.App., 611 N.E.2d 141, 143, *trans. denied.* Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial. *Id.* In our review we apply the same standard as the trial court and consider the facts in the light most favorable to the nonmoving party. *Valley Federal Savings Bank v. Anderson* (1993), Ind.App., 612 N.E.2d 1099, 1101.

The insurance policy before us is governed by ERISA. It is well settled that, where the provisions of the summary conflict with the provisions of the actual policy, the summary will prevail. *Hansen v. Continental Ins. Co.* (1991), 5th Cir., 940 F.2d 971; *Senkier v. Hartford Life & Acc. Ins. Co.* (1991), 7th Cir., 948 F.2d 1050. This interpretation is employed in order to effectuate the requirements of ERISA, which demand that the summary "shall be written in a manner calculated to be understood by the average plan participant and shall be sufficiently accurate and comprehensive to reasonably apprise" participants of their rights and obligations. 29 U.S.C. § 1022(a)(1). However, the weight of authority requires a participant to demon-

strate reliance upon a summary provision before employing this rule of construction. *Bachelder v. Communications Satellite Corp.* (1988), 1st Cir., 837 F.2d 519, 523 (reliance upon summary required); *Branch v. G. Bernd Co.* (1992), 11th Cir., 955 F.2d 1574 (same); *see Gridley v. Cleveland Pneumatic Co.* (1991), 3rd Cir., 924 F.2d 1310 (approving the *Bachelder* approach); *but see Edwards v. State Farm Mutual Auto Ins. Co.* (1988), 6th Cir., 851 F.2d 134 (while finding that reliance was present, the court stated that reliance upon a misleading summary description is not required).

While no Seventh Circuit cases have specifically addressed this issue, in *Senkier,* the court stated: "This requirement [that the summary be accurate and comprehensive] entitles the participant to rely on the summary plan document, and *if he does* the plan is estopped to deny coverage." *Senkier,* 948 F.2d at 1053 (emphasis added). This language appears to require a finding that the participant relied upon the summary. Hieber and Farm Bureau do not designate any evidence indicating reliance; thus, we are compelled to reverse the summary judgment entered in favor of Hieber and Farm Bureau.

Summary judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

STATON and ROBERTSON, JJ., concur.