**UNITED OF OMAHA, Appellant–
Third Party Defendant,**

**v.**

**William HIEBER, Dennis Hieber, Donald
Hieber, Individually and as a farm partnership, and Kevin Hieber, Appellees
and Cross–Appellants–Defendant and
Third Party Plaintiff,**

**and**

**United Farm Bureau Mutual Insurance
Company, Appellee and Cross–Appellant–Intervenor and Third Party Plaintiff.**

No. 02A05–9709–CV–408.

Court of Appeals of Indiana.

Aug. 31, 1998.

Thomas W. Yoder, Fort Wayne, for Appellant–Third Party Defendant.

Brian L. England, Fort Wayne, for Appellees.

## OPINION

KIRSCH, Judge.

United Farm Bureau Mutual Insurance Company (Farm Bureau) entered into a settlement agreement in a tort action brought against its insured by Nathan Hammond.[1] United of Omaha (United) sought subrogation to recover for medical expenses which it had paid on Hammond's behalf. By the terms of the settlement agreement, Farm Bureau assumed the responsibility to contest and satisfy United's subrogation claim. The trial court entered summary judgment in favor of Farm Bureau on the subrogation claim, and United appeals. Of the several issues raised by the parties the following is dispositive: Whether material questions of fact regarding reliance by Farm Bureau and Nathan Hammond upon a Summary Plan Description (SPD) prepared by United pursuant to the Employee Retirement Income Security Act (ERISA)[2] and furnished by United during discovery render the summary judgment contrary to law.

We reverse.

## FACTS AND PROCEDURAL HISTORY

This is the second appeal of the subrogation dispute between United and Farm Bureau. United is seeking subrogation for medical benefits which it paid on behalf of Hammond for injuries sustained in a vehicular accident with an insured of Farm Bureau. The benefits were paid pursuant to an employee benefit plan in which Hammond's father was a participant and which is governed by ERISA. The underlying tort action commenced in 1990. In that year, United notified Farm Bureau and Hammond's father that it was claiming subrogation rights and ultimately retained John Grimm, Hammond's attorney, to protect its subrogation rights. In November of 1992, United provided to Farm Bureau an SPD prepared in accordance with ERISA requirements and repre-

sented to Farm Bureau that the SPD as the "entire policy." *Record* at 533.

In regard to subrogation rights, the SPD provided,

" SUBROGATION

In the event that payment is made by the Plan for services or charges which are eligible for payment by another source, the Plan shall have the right to recover any payments which were, or became duplicate payments."

*Record I* at 344.[3] During the course of the litigation, a dispute arose regarding whether this language gave United enforceable subrogation rights. The defendants in the underlying tort action filed a third-party complaint asking the court to construe the provision. United retained independent counsel to represent its interest and terminated Grimm's representation. On June 22, 1993, United filed its Answer admitting that its subrogation claim was based on the SPD. *Record I* at 112.

In early July, the parties commenced mediation of Hammond's tort claim. United attended the mediation session, but did not participate. On July 21, 1993, United filed an amended answer in which it admitted asserting subrogation rights under the SPD but for the first time asserting that its subrogation rights arose under the language of the group policy which the SPD purported to summarize. United attached a portion of the policy to its Amended Answer. The policy read,

"8.10 SUBROGATION

Subrogation means our right to recover any policy payments:

(a) made because of an injury to you or your dependent caused by a third party's wrongful act or negligence; and

(b) which you or your dependent later recover from the third party or the third party's insurer. Third party means another person or organization.

SUBROGATION RIGHTS

---

1. The plaintiffs in the underlying tort action included Nathan Hammond, his mother, and his sister. We refer to these collectively. Nearly all of the medical benefits at issue were attributable to Nathan's injuries.

2. 29 U.S.C §§ 1001 *et seq.*

3. We refer to the Record from the first appeal as Record I.

Whenever a Local Union No. 414 Health and Welfare Fund has been or is providing medical, hospital, dental, vision or disability benefit payments as a result of an injury, sickness or death for which there may be a possible recovery of indemnity from a third party, including an insurer, the participant or dependent recipient of such benefits assigns to the Fund the right to make a claim against the third party to the extent of the amount of such benefits.

    \*    \*    \*    \*    \*    \*

The proceeds of any settlement or judgement in any claim made against a third party shall be allocated first to fully reimburse the Fund for all benefit payments advanced, less reasonable attorney's fees and a pro-rata share of the cost of prosecution.

The aforesaid allocation of proceeds shall be made regardless of whether the Fund Participant or Dependent Beneficiary or those claiming under him/her has been fully compensated for the damages arising from the injury, sickness or death. Furthermore, such allocation shall apply to claims of dependents of eligible employees covered by the Fund and regardless of whether such recipient was legally responsible for expenses of treatment."

*Record I* at 257.

On July 28, 1993, Hammond reached an informal settlement agreement with Farm Bureau and its insured. *Record* at 475. This agreement was reduced to writing and signed by the parties on November 5, 1993 and approved by the probate court on the same date. The agreement provided,

"1.0 Assignment

In consideration of the payments to be made by Defendant and Insurer to Claimants, as set forth in the "Settlement Agreement and Release" executed by the parties herein, the terms and conditions of which are incorporated by reference and made a part hereof, Claimants hereby assign to Defendant and Insurer all rights which they possess to contest and litigate the alleged subrogation claim of United.

2.0 Indemnification

In exchange for the assignment of the right to contest and litigate the alleged subrogation claim of United, Defendant and Insurer hereby agree to indemnify and hold harmless the Claimants; their next friend, custodial parent and legal guardian, Marjorie Hammond; and their attorney, John C. Grimm, from any costs, expenses, attorney fees or judgments which may be occasioned as the result of the Defendant and Insurer's litigation of the alleged subrogation claim of United."

*Record* at 545–46.

The trial court entered a summary judgment denying United's subrogation claim, and United appealed. In deciding the appeal this court confirmed that United's insurance policy is governed by ERISA, and that the actual policy had more extensive subrogation provisions than the SPD. *United of Omaha v. Hieber, et al.,* 653 N.E.2d 83, 85 (Ind.Ct.App. 1995) *trans. denied* (1996) (*Omaha I*). The court then reviewed the case law and concluded that "[i]t is well settled that, where the provisions of the summary conflict with the provisions of the actual policy, the summary will prevail." 653 N.E.2d at 88. The court went on to explain that before employing this rule of construction, the plan participant must demonstrate reliance on the summary. *Id.* at 88–89. Finding no evidence of reliance, the *Omaha I* court reversed the summary judgment and remanded for proof of reliance. 653 N.E.2d at 89.

On remand, both parties moved for summary judgment. Farm Bureau, in support of its motion, proffered the affidavit of John Grimm. In the affidavit, Grimm stated that United had given him the SPD without informing him that the actual policy contained additional subrogation clauses. *Record* at 472–73. Grimm further stated that he had relied on the SPD on behalf of Hammond. *Record* at 475. In its cross motion, United proffered evidence that Hammond's father, who was the plan participant, had not relied on the SPD.

The trial court granted summary judgment in favor of Farm Bureau, finding that Hammond had relied on the SPD in settling with Farm Bureau. *Record* at 853. After entering the judgment, the trial court signed a

*nunc pro tunc* order granting United's motion to strike the Grimm affidavit. *Record* at 877.

## DISCUSSION AND DECISION

### I. Standard of Review

In a summary judgment appeal, this court applies the same standard as the trial court. *Wickey v. Sparks,* 642 N.E.2d 262, 265 (Ind.Ct.App.1994), *trans. denied* (1995). Accordingly, this court examines evidentiary submissions, determines whether there are any genuine issues of material fact, and decides whether the moving party is entitled to summary judgment as a matter of law. Ind. Trial Rule 56(C). Where, as here, the trial court has entered findings and conclusions, those findings and conclusions aid us in understanding the trial court's actions. We are not, however, bound by those findings or the conclusions. Rather, we base our review on the evidentiary materials. *Campbell v. Spade,* 617 N.E.2d 580, 582–83 (Ind.Ct. App.1993).

### II. Law of the Case

In the first appeal, the *Omaha I* court decided the following: (1) United is a proper party to this action; (2) Farm Bureau's intervention in its insured's declaratory judgment action against United was proper, in order for Farm Bureau to challenge United's subrogation claim; (3) a plan participant must demonstrate reliance on an SPD in order to bind a carrier to the SPD; (4) the evidence of reliance was insufficient to sustain the first summary judgment.

In this second appeal, the issues determined by the *Omaha I* court are deemed conclusively established and should not be relitigated. *St. Margaret Mercy Healthcare Centers, Inc. v. Ho,* 663 N.E.2d 1220, 1223 (Ind.Ct.App.1996); *see also Herrell v. Casey* 609 N.E.2d 1145, 1147 (Ind.Ct.App.1993)(law of the case is a discretionary rule).

United argues that the *Omaha I* decision conclusively established that the only persons entitled to assert detrimental reliance on SPDs are plan participants, not beneficiaries. According to United, the evidence Farm Bureau submitted on remand proves at most that the beneficiary, Hammond, relied on the SPD. United claims there is no evidence of reliance that the plan participant, Hammond's father, relied on the SPD. Given this lack of evidence, United maintains that the law of the case mandates summary judgment in favor of United.

Farm Bureau contests United's characterization of the law of the case, maintaining that the *Omaha I* opinion at least left open the possibility that a plan beneficiary may assert reliance. Farm Bureau is correct.

As Farm Bureau points out in its brief, the *Omaha I* court did not consider the issue of beneficiary reliance. The court quoted only the portion of the ERISA statute that requires carriers to provide informative summary plan descriptions for plan participants. On remand, however, the entire statutory section became relevant. The statute expressly protects beneficiaries' ERISA interests. The complete statutory section reads:

"[The Summary Plan Description] shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants **and beneficiaries** of their rights and obligations under the plan."

29 U.S.C. § 1022(a)(1) (emphasis added).

Like the statute, the applicable regulations identify beneficiaries as a class of persons protected by the ERISA statute. In 29 C.F.R. § 2520.102–2 (1997), the regulation states: "the summary plan description ... shall be sufficiently comprehensive to apprise the plan's participants **and beneficiaries** of their rights and obligations under the plan." 29 C.F.R. § 2520.102–2(a) (emphasis added). Further, the regulation states that the summary plan description format "must not have the effect [of] misleading, misinforming, or failing to inform participants **and beneficiaries.**" *Id.* at 102–2(b) (emphasis added). The regulation also requires that the SPD explain forfeiture conditions in words a beneficiary can understand: the SPD must contain "a statement clearly identifying circumstances which may result in ... forfeiture or suspension of any benefits that a participant **or beneficiary** might otherwise expect the

plan to provide." 29 C.F.R. § 2520.102–3(*l*) (emphasis added).

■ In addition to these regulatory protections, the case law contains similar protections for beneficiaries. The Seventh Circuit Court of Appeals recently indicated that beneficiaries may assert claims against ERISA carriers.[4] *See Mers v. Marriott Int'l Group Acc. Death & Dismemberment Plan*, 144 F.3d 1014, 1024(7th Cir.1998) *petition for cert. filed* —— U.S.L.W. —— (July 31, 1998) (No. 95 C 7543). The protections for beneficiaries would be much less meaningful if beneficiaries had no method of enforcing them. To ensure that the ERISA scheme functions properly, beneficiaries must be entitled to pursue reliance claims against ERISA carriers.[5]

### III. Hammond's Detrimental Reliance Claim Under ERISA

#### A. Elements of Hammond's Claim

■ Farm Bureau, as assignee of Hammond's claim and indemnitor of· his obligations, must prove that Hammond relied on the subrogation provisions in the SPD. If Farm Bureau proves that Hammond relied on the SPD, United is bound by the SPD and is precluded from enforcing the subrogation provisions in the actual policy.· The Record demonstrates, however, that questions of fact remain as to the nature and result of Hammond's reliance.

The ERISA statute does not define the elements of reliance. In *Omaha I*, the parties had neither addressed nor considered reliance, so it was unnecessary and inappropriate for the appellate court to elaborate on the reliance concept. Instead, the court referred the parties to *Senkier v. Hartford Life & Acc. Ins. Co.*, 948 F.2d 1050 (7th Cir.1991) and noted that a claimant seeking to bind an insurer to the terms of an SPD must demon-

strate reliance on the SPD. *Omaha I*, at 83. The parties have now had the opportunity to· proffer evidence of reliance, and to study *Senkier* and the other ERISA cases cited in *Omaha I*. Having examined the evidence the parties designated, we find that questions of fact remain concerning reliance. Given that we must remand for resolution of those factual questions, it is now appropriate to further explain the ERISA reliance requirement as it applies to this case.

Most of the ERISA cases cited in *Omaha I* did not delineate the elements of reliance in ERISA, because the facts of those cases did not raise reliance issues. In *Senkier*, for example, the claimant sought to recover benefits on an accidental death policy; the issue in the case was whether the death was accidental. The claimant argued that the death was accidental within the meaning of the SPD; the insurer argued that the policy excluded the death at issue. It was immaterial whether the claimant (or the decedent) had relied on the SPD, because no one had taken any action based on such reliance. In deciding the case, the *Senkier* court referred to reliance only as a means of describing the remedy that courts may provide when an SPD conflicts with a policy. *Senkier*, 948 F.2d at 1051. Similarly, in *Hansen v. Continental Ins. Co.*, 940 F.2d 971 (5th Cir.1991), the claimant sought death benefits based on the terms of the SPD, but the insurer argued that the terms of the policy provided a lesser amount of benefits than the claimant sought. The court declared, "[t]here simply is no reliance issue in this case." *Id.* at 983. Rather, the case turned on the conflict between the SPD and the policy. The court affirmed a summary judgment in favor of the claimant on the ground that the SPD should control when it conflicts with the policy.

■ As *Senkier* and *Hansen* demonstrate, reliance is not an issue in ERISA cases when

---

4. The law of the case doctrine allows this court to reconsider its *Omaha I* holding in light of the intervening Seventh Circuit decisions. *See Key v. Sullivan.*, 925 F.2d 1056, 1060 (7th Cir.1991).

5. ERISA allows participants or beneficiaries to file suit in state court to enforce rights under the terms of the plan or to clarify future benefits. 29 U.S.C. § 1132(a)(1)(B). State courts have jurisdiction only in suits filed according to

§ 1132(a)(1)(B) or in suits brought by the State to enforce qualified medical child support orders. 29 U.S.C. § 1132(e)(1). We acknowledge the federal courts' exclusive jurisdiction over claims seeking equitable relief under 29 U.S.C. § 1132(a)(3); we find that this case falls within the concurrent jurisdiction provisions of § 1132(a)(1)(B).

there is no practical connection between the SPD and the claimant's conduct. *See Williams v. Midwest Operating Eng'r Welfare Fund*, 125 F.3d 1138, 1141 (7th Cir.1997) *overruled on other grounds* in *Mers v. Marriott Int'l Group Acc. Death & Dismemberment Plan*, 144 F.3d 1014 (7th Cir.1998). When there is no connection between the SPD and the claimant's conduct, a claimant may bind an insurer to the SPD by proving that the SPD does not comply with ERISA's disclosure requirements. *Mers*, 144 F.3d at 1022. If the SPD complies with the ERISA requirements, the claimant may bind the insurer to the SPD only if there is a direct conflict between the SPD and the underlying policy. *Id.* at 1024.

■ Where, as here, there is a practical connection between the claimant's conduct and the SPD, the claimant cannot bind the insurer to the SPD merely by showing a conflict between the SPD and the policy.[6] The claimant must prove that he relied on the SPD to his detriment.[7] *See Branch v. G. Bernd Co.*, 955 F.2d 1574, 1579 (11th Cir. 1992). There is no direct proof of such detrimental reliance in the designated materials in this case. Indeed, those materials allow an inference that Grimm as Hammond's attorney was apprised of the risk that United had a colorable and potentially enforceable subrogation claim and that he bargained for the Assignment and Indemnification Agreement to avoid any detrimental result from that risk. *Record* at 545–46. Thus, there is a question of fact as to whether Hammond relied upon the SPD, and summary judgment is inappropriate. We must therefore remand for a determination of whether Hammond detrimentally relied upon the SPD.

## B. Effect of "Certification" by Hammond's Father

Hammond's father completed the forms necessary to apply for coverage of the medical expenses, including a one-page form containing the following notice:

"I understand that my group policy contains a provision which allows United of Omaha to pursue recovery of policy benefits paid due to the wrongful act or negligence of a third party. I also agree to do whatever reasonably necessary to assist United of Omaha in pursuing its reimbursement rights and that I will reimburse United of Omaha any monies received, not to exceed policy benefits paid, in settlement of my claim against the third party."

*Record* at 75. The form has no title and is not dated.

United claims that Hammond is bound by his father's signature on this form. Farm Bureau responds that the form has no probative value, pointing out that Hammond and his attorney were unaware of the form until after they reached a settlement with Farm Bureau. As such, Farm Bureau continues, the form has no bearing on the issue of whether Hammond relied on the subrogation provisions in the plan summary.

The trial court did not directly address the issue of whether the form was valid evidence, nor do the parties address this issue on appeal. The trial court found,

"Omaha did **not** produce this certification when asked in formal discovery to produce all documents upon which it relied in support of its subrogation claim. For this reason, the certification of Steven Hammond does not in any way negate Nathan Hammond's claim as a beneficiary to rely on the reasonable accuracy and comprehensiveness of the SPD."

*Record* at 853. The trial court's decision regarding the certification was a valid exercise of its discretion.

United nonetheless cites *Serembus v. Mathwig*, 817 F.Supp. 1414 (E.D.Wis.1992) for the proposition that a certification signed by a plan participant binds both the participant and the beneficiary to the subrogation provisions in the certification. The *Serembus* decision does not control the certification here because the *Serembus* facts are materially different from the facts here. In *Serembus*, there was no conflict between the SPD and the plan document, nor was there any suggestion that the beneficiary had relied on the

---

6. The insurer would be bound to the SPD if the SPD did not comply with ERISA. Neither party claims that the SPD fails to comply with ERISA.

7. We recognize, as did the *Omaha I* court, that some jurisdictions have abandoned the reliance requirement. We adhere to the court's previous holding that reliance is required.

SPD. Here, the beneficiary's reliance and the conflict between the SPD and the policy are central facts. The trial court did not err in its findings concerning the certification as it relates to the ERISA claim.[8]

## IV. Farm Bureau's State Law Reliance Claim

■ ERISA preempts many state law claims, but does not preempt every claim that tangentially involves an ERISA plan.[9] The ERISA statute is designed "to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983). A claimant may pursue a state law cause of action so long as the claim does not impact the interests of employees and beneficiaries, and resolution of the claim does not interfere with the uniform federal scheme governing ERISA actions. *Hospice of Metro Denver, Inc. v. Group Health Ins. of Okla., Inc.,* 944 F.2d 752, 754 (10th Cir.1991). Further, state law may control the dispute if the parties involved are outside the scope of ERISA. *Morstein v. Nat'l Ins. Svcs., Inc.,* 93 F.3d 715, 719–22 (11th Cir.1996)*cert. denied* (ERISA does not preempt a state law claim brought by a plan participant against a non-ERISA entity); *Lordmann Enter., Inc. v. Equicor, Inc.,* 32 F.3d 1529, 1533–34 (11th Cir.1994) *cert. denied.*

■ Here, Farm Bureau has a separate claim against United that does not arise directly from ERISA or from the SPD. Rather, the claim arises from United's representations during the course of the litigation that the SPD constituted the entire policy and that the SPD was the only document upon which United based its subrogation claim. This claim is one of simple promissory estoppel, and does not derive from or depend upon Hammond's ERISA claim. Farm Bureau's promissory estoppel claim does not affect the relationship between United and its participants and beneficiaries, nor does the claim impact the administration of the ERISA plan. At most, the claim impacts the manner in which United responds during litigation to requests for information about its subrogation provisions. As such, the claim is not preempted by ERISA.

■ According to Indiana law, a promissory estoppel claim has five elements: 1) a promise by the promisor (here, United), 2) made with the expectation that the promisee (here, Farm Bureau) will rely thereon, 3) which induces reasonable reliance by the promisee, 4) of a definite and substantial nature, and 5) injustice can be avoided only by enforcement of the promise. *Lightle v. Harcourt Mgmnt. Co.,* 634 N.E.2d 858, 860 (Ind.Ct.App.1994) *trans. denied.*

■ Questions of fact concerning these elements preclude a summary judgment on Farm Bureau's promissory estoppel claim. First, the Record does not indicate whether, at the time Farm Bureau reached a settlement agreement with Hammond, Farm Bureau was relying upon United's "promise" that the SPD was the entire policy. From the facts in the Record we cannot determine whether Farm Bureau knew, from experience or otherwise, that there was an actual policy in addition to the SPD. Second, if Farm Bureau did rely upon United's representations, the Record does not indicate whether that reliance was reasonable, particularly in light of the Amended Answer which included the actual policy language and which United served before the settlement was complete. Third, neither the Record nor the parties' arguments identify an injustice to be avoided by enforcing the United's representation that the SPD was the entire policy.

Given these factual issues, we must reverse and remand this case for yet another round of litigation.

Reversed and remanded.

SULLIVAN and BAKER, JJ., concur.

---

8. We express no view as to whether the certification impacts Farm Bureau's state law reliance claim.

9. The ERISA preemption provision is in 29 U.S.C. § 1144(a): ERISA supersedes "all State laws insofar as they may ... relate to any employee benefit plan."