**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Nov 25 2014, 8:55 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT *PRO SE*:

**JASON T. MYERS**
Plainfield, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JASON T. MYERS, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 79A05-1403-CT-160 |
| | ) | |
| GARY W. MYERS, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE TIPPECANOE CIRCUIT COURT
The Honorable Donald L. Daniel, Judge
Cause No. 79C01-1206-CT-23

**November 25, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

**CASE SUMMARY**

Appellant-Plaintiff Jason T. Myers and Appellee-Defendant Gary W. Myers are brothers. On June 20, 2012, Jason filed a lawsuit against Gary alleging that Gary failed to give Jason his share of their deceased father's estate. At some point, Jason amended his complaint to include requests for damages relating to his claim that Gary intentionally inflicted emotional distress upon him, punitive damages, and damages under the Victim's Relief Act ("VRA"). Jason subsequently requested leave to amend his complaint to add additional defendants.

On January 2, 2013, the trial court granted a default judgment against Gary. The trial court also denied Jason's request for leave to amend his complaint. Jason subsequently filed numerous renewed requests for leave to amend his complaint to add additional defendants, each of which was denied by the trial court. On February 28, 2014, the trial court issued an order awarding Jason $14,041.00 in damages. The trial court also denied Jason's request for damages relating to his claim that Gary intentionally inflicted emotional distress upon him, request for punitive damages, and request for damages under the VRA.

On appeal, Jason contends that the trial court erred in denying his requests for damages relating to his claim that Gary intentionally inflicted emotional distress upon him, request for punitive damages, and request for damages under the VRA. Jason also contends that the trial court abused its discretion in denying his renewed request to amend his complaint to add additional defendants. We affirm.

2

**FACTS AND PROCEDURAL HISTORY**

Jason and Gary are brothers. Their father, Dale, died intestate on November 4, 2010.[1] At the time of his death, Dale had $21,782.81 in bank accounts and a 1999 Ford F150 truck that was valued at $6,300.00. Jason, who was incarcerated at the time of Dale's death, subsequently received assurances that Gary would give him his share of Dale's estate after the proper Tippecanoe County offices gave the bank clearance to disperse the funds to Gary. Gary, however, did not give Jason his share of Dale's estate.

On June 20, 2012, Jason, while still incarcerated, filed a complaint alleging that Gary had failed to provide him with his share of Dale's estate. Gary filed an appearance, but no other substantive response. At some point, Jason amended his complaint to allege that Gary intentionally inflicted emotional distress upon him, to request punitive damages, and to request damages under the VRA. On October 22, 2012, Jason filed a motion for default judgment. On December 17, 2012, Jason requested leave to amend his complaint to add additional parties as defendants. On January 2, 2013, the trial court denied Jason's request to amend his complaint to add additional defendants and granted default judgment against Gary in favor of Jason.

On January 14, 2013, Jason filed a renewed request to amend his complaint to add additional defendants. The trial court denied Jason's renewed request on March 8, 2013. On July 10, 2013, the trial court scheduled a hearing on damages for February 27, 2014. On February 14, 2014, Jason filed another renewed motion to amend his complaint to add additional defendants. The trial court denied Jason's renewed motion on February 20, 2014.

3

On February 27, 2014, the trial court conducted a hearing on damages. The next day, the trial court issued an order awarding Jason $14,041.00 in damages and denying his request for damages relating to his claim that Gary intentionally inflicted emotional distress upon him, request for punitive damages, and request for damages under the VRA. This appeal follows.

**DISCUSSION AND DECISION**

**I. Challenges Relating to the Trial Court's Award of Damages**

On appeal, Jason contends that the trial court erred in awarding him damages. Specifically, Jason argues that the trial court erred by failing to award damages relating to his claim that Gary intentionally inflicted emotion distress upon him. Jason also argues that the trial court erred in denying his request for putative damages and for damages under the VRA.

**A. Intentional Infliction of Emotional Distress**

Jason argues that the trial court erred by failing to award damages relating to his claim that Gary intentionally inflicted emotional distress upon him. "The definition of the tort of intentional infliction of emotional distress is that 'one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress....'" *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991) (quoting Restatement (Second) of Torts § 46 (1965)). "The tort arises when a defendant (1) engages in 'extreme and outrageous' conduct that (2) intentionally or recklessly (3) causes (4) severe emotional distress to another." *Bradley v. Hall*, 720 N.E.2d 747, 752 (Ind. Ct. App. 1999) (citing *Doe v. Methodist Hosp.,* 690 N.E.2d 681, 691 (Ind. 1997)). "It is the intent to harm one emotionally that forms the basis for the tort." *Id.* (citing *Cullison*, 570

---

[1] It appears from the record that Jason and Gary were Dale's only two heirs.

N.E.2d at 31).

> Liability for intentional infliction of emotional distress is found only if there is extreme and outrageous conduct.  The comments to the Restatement, Section 46 read:
>> d. *Extreme and outrageous conduct.*  The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous.  It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.  Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
>
> Restatement (Second) of Torts § 46 (quoted in *Gable v. Curtis*, 673 N.E.2d 805, 809 (Ind. Ct. App. 1996)).  What constitutes "extreme and outrageous" conduct depends, in part, upon prevailing cultural norms and values. In the appropriate case, the question can be decided as a matter of law.  *See, e.g., Conwell v. Beatty*, 667 N.E.2d 768, 775-77 (Ind. Ct. App. 1996) (no outrageous conduct where sheriff announced deputy's arrest at press conference and refused to assist deputy in completing retirement forms); *Gable*, 673 N.E.2d at 809-11 (no outrageous conduct where contractor's wife phoned purchaser seven times in one hour, screaming, threatening to repossess home and to come over, and stating repeatedly that the purchasers "would pay").

*Bradley*, 720 N.E.2d at 752-53.

In the instant matter, the trial court determined that Jason failed to prove his intentional infliction of emotional distress claim.  We agree.  In support of his claim, Jason presented testimony from his and Gary's mother who indicated that she believed that Gary had acted in a willful or wanton manner by misrepresenting that all of the money included in

5

Dale's estate belonged to him. Jason also asserted that in light of Gary's failure to place some of the money from Dale's estate in his prison account, Jason suffered emotionally because he was not able to purchase food or personal hygiene materials from the prison commissary or to hire private investigators to investigate claims relating to his numerous ongoing civil lawsuits. Jason also presented evidence, however, which would suggest that he had been informed that he needed to speak directly with Gary about the potential inheritance and that their mother would not be treated as a "middle man." Plaintiff's Ex. 2. Further, while Plaintiff's Exhibit 4, a letter to Jason from his and Gary's grandmother, indicated that "there is no money," the letter suggested that the lack of money was due to garnishment of some of the funds by the State and the need for Gary, who was apparently unemployed at the time, to pay living expenses. Even assuming Gary did spend Jason's share of Dale's estate on living expenses, the record fails to prove by a preponderance of the evidence that Gary spent the funds in a manner that was intended to harm Jason. Upon review, we conclude that this evidence falls short of proving that Gary's alleged conduct was so extreme in degree or outrageous in character that it went beyond all possible bounds of decency. Because Jason failed to prove that Gary intentionally inflicted emotional distress upon him, he cannot recover damages in connection to this claim. We therefore affirm the judgment of the trial court in this regard.

## B. Punitive Damages

Jason also argues that the trial court erred in denying his claim for punitive damages.

The correct standard of review for punitive damages is whether, considering only the probative evidence and the reasonable inferences supporting it,

6

> without weighing evidence or assessing witness credibility, a reasonable trier of fact could find by clear and convincing evidence that the defendant acted with malice, fraud, gross negligence or oppressiveness which was not the result of a mistake of fact or law, honest error of judgment, overzealousness, mere negligence, or other human failing.

*Budget Car Sales v. Stott*, 662 N.E.2d 638, 639 (Ind. 1996) (citing *Bud Wolf Chevrolet, Inc. v. Robertson*, 519 N.E.2d 135, 137 (Ind. 1988)).

In arguing that the trial court erred in denying his request for punitive damages, Jason points to the testimony of his Mother in which she claimed that Gary had misrepresented to various State and County governmental offices that he was entitled to recover all of the funds and property in question. Even assuming that this testimony, without more, could be found to be sufficient to prove that Jason was entitled to an award of punitive damages, the trial court, acting as the trier-of-fact, was under no obligation to believe this testimony and was free to believe or disbelieve Jason's mother as it saw fit. *See Thompson v. State*, 804 N.E.2d 1146, 1149 (Ind. 2004); *Riviera Plaza Investments, LLC v. Wells Fargo Bank, N.A.*, 10 N.E.3d 541, 552 (Ind. Ct. App. 2014); *McClendon v. State*, 671 N.E.2d 486, 488 (Ind. Ct. App. 1996); *Moore v. State*, 637 N.E.2d 816, 822 (Ind. Ct. App. 1994), *trans. denied*. Jason's claim that he presented sufficient evidence to prove that he is entitled to an award of punitive damages effectively amounts to an invitation for this court to reweigh witness credibility, which we will not do. *See generally, Wedge v. Lipps Indus., Inc.*, 575 N.E.2d 332, 339 (Ind. Ct. App. 1991) (providing that this court will not reweigh the evidence or re-judge witness credibility on appeal). We therefore affirm the judgment of the trial court in this regard.

### C. Compensation Under the Victim's Relief Act

Jason also argues that the trial court erred in denying his claim for additional damages under the VRA which is codified at Indiana Code section 34-24-3-1. The VRA provides that a person who suffers a pecuniary loss as a result of an offense against their property may bring a civil action against another person who caused the loss to recover the following: "(2) The costs of the action … [and] (5) A reasonable amount to compensate the person suffering loss for time used to: (A) file papers and attend court proceedings related to the recovery of a judgment under this chapter; or (B) travel to and from activities described in clause (A)." The determination of whether to enter an award of damages above the actual damages suffered by the plaintiff is within the discretion of the trial court. *MCS LaserTec, Inc. v. Kaminski*, 829 N.E.2d 29, 35 (Ind. Ct. App. 2005). "'An abuse of discretion will be found when the trial court's action is against the logic and effect of the facts and circumstances before it and the inferences which may be drawn therefrom.'" *Harlan Bakeries, Inc. v. Muncy*, 835 N.E.2d 1018, 1037 (Ind. Ct. App. 2005) (quoting *City of Carmel v. Leeper Elec. Servs., Inc.*, 805 N.E.2d 389, 392 (Ind. Ct. App. 2004), *trans. denied*).

In arguing that the trial court abused its discretion in denying him damages under the VRA, Jason appears to argue that he is entitled to compensation for the work he completed in connection with the underlying lawsuit because Gary committed what amounted to criminal conversion. A person commits criminal conversion by knowingly or intentionally exerting unauthorized control over the property of another person. *See* Ind. Code § 35-43-4-3. "'To exert control over property' is defined by statute as 'to obtain, take, carry, drive, lead away,

conceal, abandon, sell, convey, encumber, or possess property or to secure, transfer, or extend a right to property.'" *Muncy*, 835 N.E.2d at 1037 (quoting Ind. Code § 35-43-4-1). A criminal conviction is not a prerequisite for bringing a civil action, and unlike a criminal trial, a claimant need only prove by a preponderance of the evidence that the accused committed the alleged act. *Id*.

The trial court granted a default judgment in favor of Jason on January 2, 2013, after Gary failed to respond to Jason's allegation that he failed to divide Dale's estate between himself and Jason according to the rules of intestate succession. On February 27, 2014, the trial court conducted a hearing to determine what damages Jason was entitled to recover. During this hearing, Jason claimed that he was entitled to damages under the VRA. In making this claim, Jason stated that he had "put in" approximately twenty-five to thirty hours on the matter. Tr. p. 14. Jason, however, did not specify an amount to which he believed he was entitled, instead requesting that the trial court "state a fair amount." Tr. p. 14. The trial court declined to award Jason any additional damages under the VRA. On appeal, Jason argues that the trial court should have awarded him payment for his work on the case at a rate "of about $110.00 an hour or so." Appellant's Br. p. 17.

Upon review, we cannot say that the trial court abused its discretion in declining to award Jason damages under the VRA. Again, Jason failed to specify an amount below to which he believed he was entitled to receive, and only now on appeal argues that he should have been compensated at a rate of approximately $110.00 per hour. As such, although the trial court entered default judgment in Jason's favor and awarded him damages accordingly,

9

the record does not support the conclusion that the trial court's denial of Jason's request for damages under the VRA was against the logic and effect of the facts and circumstances before the trial court. We therefore affirm the judgment of the trial court in this regard.

## II. Challenge Relating to the Trial Court's Denial of Jason's Request for Leave to Amend His Complaint

Jason also contends that the trial court abused its discretion in denying his renewed request to amend his complaint to include additional defendants.

> The trial court has broad discretion when deciding whether to permit amendments to pleadings. *Criss v. Bitzegaio* (1981), Ind., 420 N.E.2d 1221, 1223; *Huff v. Travelers Indem. Co.* (1977), 266 Ind. 414, 419, 363 N.E.2d 985, 989. Although amendments should be liberally allowed under Indiana Trial Rule 15(A), proper regard for prejudice to the non-moving party should be given. *Compare Criss*, 420 N.E.2d at 1223 (no abuse of discretion for trial court to have granted leave to amend where there is no prejudice to the other party), with *B & D Corp. v. Anderson, Clayton & Co.* (1979), 180 Ind. App. 115, 124, 387 N.E.2d 476, 482 (denial of motion to amend upheld where amendment would further complicate issues and delay resolution with the injection of a new claim).
>
> Discretion is afforded a trial court to act in accord with what is fair and equitable in each case. *McCullough v. Archbold Ladder Co.* (1993), Ind., 605 N.E.2d 175, 180. An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or if the trial court has misinterpreted the law. *Id*. "An abuse of discretion is an erroneous conclusion in judgment when clearly against the logic and effect of the facts or the reasonable, probable deductions to be drawn therefrom." *Boles v. Weidner* (1983), Ind., 449 N.E.2d 288, 291.

*Templin v. Fobes*, 617 N.E.2d 541, 543 (Ind. 1993).

"In an amended pleading, a party can add, substitute and/or drop parties to the action."

*Russell v. Bowman, Heintz, Boscia & Vician, P.C.*, 744 N.E.2d 467, 471 (Ind. Ct. App. 2001)

(citing *Brendanwood Neighborhood Ass'n, Inc. v. Common Council of City of Lebanon*, 167

Ind. App. 253, 338 N.E.2d 695, 697-98 (1975)).

10

However, the joinder of parties must comply with the trial rules applicable to joinder. With regard to the permissive joinder of parties, T.R. 20(A) provides:

> (A) Permissive Joinder:
>
> ****
>
> (2) All persons may be joined in one [1] action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of, or arising out of, the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.
>
> A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.…

"The purpose of T.R. 20(A) is to promote trial convenience, expedite claims, and avoid multiple lawsuits. To accomplish these ends, Indiana courts give T.R. 20(A) the broadest possible reading, especially in light of T.R. 20(B) and T.R. 42(B), which allow for separate trials after all parties have been joined." *United of Omaha v. Hieber*, 653 N.E.2d 83, 87 (Ind. Ct. App. 1995) (citation omitted), *reh'g denied*, *trans. denied*.

*Id.*

To join defendants under T.R. 20(A), three requisites must be met. First, a right of relief must be asserted against the defendants jointly, severally, or in the alternative.

* * *

The second and most important requirement is that the claims arose out of the same transaction, occurrence, or series of transactions or occurrences. T.R. 20(A); [*Alumax Extrusions, Inc. v. Evans Transp. Co., Monon Trailer Div.*, 461 N.E.2d 1165, 1168 (Ind. Ct. App. 1984)]. Indiana courts have applied the logical relationship test in determining whether the causes of action arose out of the same transaction or occurrence. *Grove v. Thomas* (1983), Ind. App., 446 N.E.2d 641, 643, *trans. denied*. This is the same test used for Trial Rule 13(A). "For purposes of that rule, all logically related events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence." 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, at § 1653. Moreover, "'"[t]ransaction" is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon their connection as upon their logical relationship.'" *Middelkamp v. Hanewich* (1977), 173 Ind.

11

App. 571, 588, 364 N.E.2d 1024, 1035 (quoting, *Moore v. New York Cotton Exchange* (1926), 270 U.S. 593, 610, 46 S. Ct. 367, 371, 70 L. Ed. 750, 757), *trans. denied.*

The third and final requirement for T.R. 20(A) joinder is that there are common questions of law or fact. Wright and Miller states, "Rule 20(A) does not require that every question of law or fact in the action be common among the parties; rather, the rule permits party joinder whenever there will be at least one common question of law or fact." Wright and Miller, at § 1653[;] *McCoy v. Like*, 511 N.E.2d 501, 504, 505 (Ind. Ct. App. 1987) (remaining citations omitted), *reh'g denied*, *trans. denied.*

*Id.* at 472 (footnote omitted, asterisks in original).

Jason argues that the trial court abused its discretion in denying his renewed request for leave to add the Tippecanoe County Assessor's Office and Jo Whitlock, in her former capacity as an employee of the Tippecanoe County Treasurer's Office, as defendants in the underlying lawsuit. In making this argument, Jason asserts that the Tippecanoe County Assessor's Office and Whitlock should have been included as defendants in the underlying lawsuit because each breached a duty owed to Jason by failing to act upon his correspondences regarding Dale's estate and granting clearance for the bank to release the proceeds of Dale's estate to Gary. Jason acknowledges, however, that absent a duty, there can be no liability for breach of said duty.

Indiana Code section 34-13-3-3 provides that "[a] governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the following: … (7) The performance of a discretional function." The purpose of immunity is to insure that public employees can exercise their independent judgment necessary to carry out their duties without threat of harassment by litigation or threats of litigation over decisions made within the scope of their employment. *Ind. Dep't of Correction v. Stagg*, 556

12

N.E.2d 1338, 1343 (Ind. Ct. App. 1990). Further, there is no requirement of a showing of good faith in order to qualify for the immunity. *See id.* at 341. Thus, even assuming that the Tippecanoe County Assessor's Office and Whitlock could be found to have breached some duty owed to Jason, all actions complained of by Jason, *i.e.*, granting clearance for the bank to release the proceeds of Dale's estate to Gary, were conducted within the course of the business of the Tippecanoe County Assessor's Office's and Whitlock's employment with Tippecanoe County. As such, both the Assessor's Office and Whitlock are immune from liability under the Indiana Tort Claims Act.

Jason further asserts that based upon his correspondences, one should have known that Gary was not entitled to receive all of the proceeds of his and Jason's father's estate and that the act of releasing the entire estate to Gary represented willful and wanton misconduct.

> Willful or wanton misconduct consists of either: "1) an intentional act done with reckless disregard of the natural and probable consequence of injury to a known person under the circumstances known to the actor at the time; or 2) an omission or failure to act when the actor has actual knowledge of the natural and probable consequence of injury and his opportunity to avoid the risk." *U.S. Auto Club, Inc. v. Smith*, 717 N.E.2d 919, 924 (Ind. Ct. App. 1999) (citing *Witham v. Norfolk & Western Ry. Co.*, 561 N.E.2d 484, 486 (Ind. 1990), *reh'g denied*), *trans. denied*. The elements of willful or wanton misconduct are: "(1) the defendant must have knowledge of an impending danger or consciousness of a course of misconduct calculated to result in probable injury; and (2) the actor's conduct must have exhibited an indifference to the consequences of his conduct." *Id*. (citing *Witham*, 561 N.E.2d at 486). Also, "[o]ur supreme court has accepted that 'wanton and willful' and 'reckless' seem to imply the same disregard for the safety of others.'" *Bowman ex rel. Bowman v. McNary*, 853 N.E.2d 984, 995 (Ind. Ct. App. 2006) (quoting *Obremski v. Henderson*, 497 N.E.2d 909, 911 (Ind. 1986), *reh'g denied*).

*Ellis v. City of Martinsville*, 940 N.E.2d 1197, 1204-05 (Ind. Ct. App. 2011).

In the instant matter, Jason has failed to demonstrate that Whitlock or any member of

13

the Tippecanoe County Assessor's Office acted in a willful or wanton manner. The record is devoid of any evidence suggesting that Whitlock or any member of the Tippecanoe County Assessor's Office had knowledge of an impending danger or consciousness of a course of misconduct that was calculated to result in probable injury to Jason. The record is also devoid of any evidence suggesting that the conduct of Whitlock or any member of the Tippecanoe County Assessor's Office exhibited an indifference to the consequences of their conduct. Further, despite Jason's claim to the contrary, it seems reasonable for a government employee to, in good faith, believe that the proceeds of an estate of an individual who died intestate will be divided appropriately between heirs after the employee grants clearance for the proceeds to be released to one of the heirs, especially when the other heir is currently incarcerated and not available to complete any paperwork that might be necessary before the funds can be released. Accordingly, we conclude that the trial court did not abuse its discretion in this regard.

## CONCLUSION

In sum, having concluded that the trial court did not (1) err in denying Jason's request for damages relating to his claim that Gary intentionally inflicted emotional distress upon him, (2) err in denying Jason's request for punitive damages, (3) abuse its discretion in denying Jason's claim for damages under the VRA, or (4) abuse its discretion in denying Jason's renewed request to amend his complaint to include additional parties, we affirm the judgment of the trial court.

The judgment of the trial court is affirmed.

14

BARNES, J., concurs.

BROWN, J., concurs in part and dissents in part with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JASON T. MYERS, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 79A05-1403-CT-160 |
| | ) | |
| GARY MYERS, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

**BROWN, Judge, concurring in part and dissenting in part.**

I concur in all respects with the majority except as to Jason's claim for damages under the Victim's Relief Act ("VRA"). The VRA, codified at Indiana Code Section 34-24-3-1, provides that a person who suffers a pecuniary loss as a result of an offense against his property may bring a civil action against the person who caused the loss to recover the following: "(2) The costs of the action . . . (5) A reasonable amount to compensate the person suffering loss for time used to: (A) file papers and attend court proceedings related to the recovery of a judgment under this chapter; or (B) travel to and from activities described in clause (A) . . . [and] (7) All other reasonable costs of collection." In his Supplemental Memorandum in Support of Damages filed with the trial court on February 14, 2014, in paragraph number (1)(d), he requested "$2,200.00 for the approximately 20 hours (or more) of work preparing documents and attending court to obtain the money." Appellant's Appendix at 103. This amounts to $110 per hour. At the hearing on damages on February 27, 2014, in support of his claim he testified that "I will say that the amount of time that I

16

have put in here now with this Court trip and coming away is approximately 25 to 30 hours."

Transcript at 14.  In response to the court's question, "[a]nd how much per hour are you requesting," he replied:

> Your honor I only had the amount that was put forth in the memorandum that came from the local county - - it was actually Montgomery County and that is what's paid to certify legal assistance [sic], paralegals, I am not sure exactly what to ask for in that your honor.  I would leave that to the Court to state a fair amount.

Id.

Jason clearly proved his underlying claim that his brother unlawfully converted to his own use Jason's inheritance from his father.  In addition to proving that Gary used Jason's money for Gary's personal use, Jason called his mother as a witness who testified that Gary had forged Jason and Gary's father's name on the title to the truck in question and then presented it to the BMV to have the truck titled in Gary's name.  Jason also made appropriate filings with the court and ably presented testimony and a variety of exhibits at the hearing to support his claims.

Jason's testimony and request at the hearing was for a "fair amount" under the VRA, and suggested the hourly rate for certified legal assistants and paralegals in Montgomery County as a basis.  See Larson v. Karagan, 979 N.E.2d 655, 661-662 (Ind. Ct. App. 2012) (noting that the VRA "permits a person who has suffered a pecuniary loss as a result of a criminal conversion to bring a civil action to recover the loss" and holding that the trial court did not err in awarding damages thereunder).  The VRA provides for a reasonable amount of compensation, and I believe it was an abuse of discretion for the trial court to deny him any

17

sum at all as compensation for his time and work, and therefore respectfully dissent on this

point.