**John BRAGG and Built on Foundation, Inc., Appellants–Plaintiffs,**

**v.**

**CITY OF MUNCIE and the Housing Authority, Appellees–Defendants.**

No. 18A04–0912–CV–725.

Court of Appeals of Indiana.

June 30, 2010.

to whether the defendant, the City of Muncie, was justified in inducing the repudiation of an urban development contract that the developer entered into with the executive director of Muncie's housing authority. Although the developer's arguments are focused on whether the City tortiously interfered with the agreement, this case is really about whether a valid contract even existed.

Appellants-plaintiffs John Bragg and his company, Built On Foundation, Inc., (collectively, Bragg), appeal the trial court's grant of summary judgment in favor of appellee-defendant City of Muncie (City) and the Muncie Housing Authority (MHA),[1] claiming that a genuine issue of material of fact exists regarding Bragg's claim for tortious interference with a contract. More specifically, Bragg contends that the trial court erred in concluding as a matter of law that the City's "interference" with the purported land purchase and development contract that Bragg entered into with MHA's executive director the City was justified. Appellant's Br. p. 1. Concluding that the trial court properly entered summary judgment for the City, we affirm.

Kevin N. Tharp, Patrick E. Chavis IV, Riley Bennett & Egloff, LLP, Indianapolis, IN, Attorneys for Appellants.

Donald K. McClellan, McClellan & McClellan, Muncie, IN, Attorney for Appellees.

## OPINION

BAKER, Chief Judge.

A plaintiff-developer claims that the designated evidence in the underlying summary judgment proceeding is conflicting as

*FACTS*

Sometime in 2003, the MHA sought to demolish and rebuild two housing units that were located in the City. On May 13, 2003, the MHA was awarded a HOPE VI grant from the United States Department of Housing and Urban Development (HUD) that it intended to use for the demolition and rebuilding of the "Munsyanna Housing Unit." Appellant's App. p. 246, 390–91, 552, 561–62. The new development, which was known as Millennium Place, was a $48 million federally-funded

---

1. Although the MHA is included in the caption, it is not a party to this appeal.

project for low income persons designed to clean up an inner city high-crime area.

The second project involved the redevelopment of the City's Parkview Apartments. The MHA planned to construct single-family homes or duplexes in place of the existing one-bedroom apartments at Parkview. To accommodate this project, the MHA needed to purchase additional real estate, which it planned to obtain by acquiring surrounding properties.

On November 1, 2004, Charles Weatherly, MHA's Executive Director, entered into a written agreement with Bragg. Pursuant to the terms of the proposed agreement, MHA was to purchase Bragg's real estate for $36,000 and hire Bragg as the developer for the project.

On March 23, 2005, the City's then-Mayor, Dan Canan (hereinafter referred to as Mayor), first learned of the November 1, 2004, document that Weatherly and Bragg had executed. Both Weatherly and Bragg acknowledged that they had not previously told the Mayor about the agreement. Shortly thereafter, the Mayor contacted Jerry Thornburg—the director of Community Development—and inquired whether he knew about the contract and whether it had been approved by MHA's Board members (Board). When Thornburg denied any knowledge of the agreement, the Mayor's concerns heightened. Although the Mayor had been aware of Bragg's interest in the redevelopment project, he questioned various terms of the contract, particularly the provision that required MHA to reimburse Bragg for the infrastructure work. The Mayor was also concerned about the legality of the agreement because MHA had not first engaged in a bidding process. Finally, the Mayor questioned the estimated cost of $90,000 for twenty-four homes, or a little over $2 million, how MHS would pay the amounts owed, and whether there might be a nega-

tive impact on funding the Millennium Place project.

Following a meeting with Thornburg, the Mayor contacted Aliza McNeill, MHA's chairperson. She advised the Mayor that she was not aware of the contract and to her knowledge the Board had not approved it. Consequently, McNeill scheduled an executive session of the Board and invited the Mayor to attend. The Mayor expressed his concerns about the contract to the Board at the April 7, 2005, meeting.

McNeill stated that she was not aware of the agreement until it was first brought to her attention earlier that month. And she was of the opinion that "Weatherly had exceeded his authority as Executive Director." Appellant's App. p. 159. Connie Dodd, the Executive Assistant and record keeper for MHA, submitted an affidavit averring that from May 2003 through April 2005, there were no minutes from any Board meeting establishing that Weatherly had recommended Bragg as a developer for MHA. Moreover, there were no records establishing that the Board had adopted a resolution authorizing Weatherly to enter into a contract with Bragg to develop for MHA.

At a special meeting of the Board on April 26, 2005, Commissioner Gavin Greene moved to nullify the contract. Three Commissioners voted in favor of the motion and two voted against it.

On October 24, 2005, Bragg filed an amended complaint against the City and MHA, seeking a declaratory judgment and specific performance for breach of contract and tortious interference with the contract.

Thereafter, on July 15, 2008, the MHA filed a motion for partial summary judgment, arguing that certain development terms set forth in the contract were void. On October 9, 2008, the City moved for summary judgment, arguing that it was

entitled to judgment as a matter of law because there was no genuine issue of material fact that the City's involvement with the purported contract that Bragg and Weatherly had executed was "without justification" and/or "illegal." Appellant's App. p. 414. Following a hearing, the trial court granted the City's motion for summary judgment and denied MHA's motion for partial summary judgment.[2] Bragg now appeals.[3]

### I. Standard of Review

We review a summary judgment order de novo. *Kovach v. Caligor Midwest,* 913 N.E.2d 193, 196 (Ind.2009). That is, we will affirm where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law based only on the facts supported by designated evidence. Ind. Trial Rule 56(C). Notwithstanding a conflict in the facts on some elements of a claim, summary judgment is appropriate when there is no dispute with regard to facts that are dispositive of the litigation. *Ritchhart v. Indianapolis Pub. Sch.,* 812 N.E.2d 189, 192 (Ind.Ct.App.2004). Finally, we will affirm a grant of summary judgment upon any theory supported by the designated materials. *Bernstein v. Glavin,* 725 N.E.2d 455, 458 (Ind.Ct.App. 2000).

### II. Bragg's Contentions

■ Bragg argues that the trial court erred in granting the City's motion for summary judgment on the tortious interference claim because the designated evidence is conflicting as to whether the City and the Mayor were justified in inducing the Board to repudiate the contract with Bragg. Bragg asserts that the designated evidence clearly establishes that the City's "concerns" about the contract were not legitimate and its decision to "kill" the project was made with the intent to injure his company. Appellant's Br. p. 1.

■ The elements of tortious interference with a contract are: (1) the existence of a valid and enforceable contract; (2) the defendant's knowledge of the existence of the contract; (3) the defendant's intentional inducement of the breach of contract; (4) the absence of justification; and (5) damages resulting from the defendant's wrongful inducement of the breach. *Allison v. Union Hosp., Inc.,* 883 N.E.2d 113, 118 (Ind.Ct.App.2008). One who induces a party to a contract to break it, intending to injure another person or to get a benefit for himself, commits an actionable wrong unless there is sufficient justification for the interference. *Wade v. Culp,* 107 Ind. App. 503, 23 N.E.2d 615, 618 (1939). Whether the defendant harbored actual ill will towards the plaintiff is irrelevant for the purpose of determining whether a defendant committed tortious interference. *Allison,* 883 N.E.2d at 120.

■ We also note that a plaintiff must prove the absence of justification by estab-

---

2. The trial court did not enter findings of fact or conclusions of law in its summary judgment order.

3. The City has filed a "Motion to Strike Appellants' Appendix and Brief" because those materials "do not comply with T.R. 56(C) and (H) and App. R. 46 . . . and 50." More specifically, the City contends that Bragg's appendix "contains voluminous discovery materials and affidavits in their entirety that were not specifically designated to the trial court in the Motion for Summary Judgment proceeding

. . . [and the appellate brief] contains numerous citations to the Appendix which cited evidence fails to comply with T.R. 56(C)." Notwithstanding these claims, any extraneous materials that the Appellant's may have submitted in its Appendix provides us with a full understanding as to how the summary judgment proceedings unfolded in the trial court. In short, we have the necessary materials before us to decide the issues in this appeal. Thus, we deny the City's motion to strike.

lishing that "the interferer acted intentionally, without a legitimate business purpose, and the breach is malicious and exclusively directed to the injury and damage of another." *Bilimoria Computer Sys., LLC v. Am. Online, Inc.*, 829 N.E.2d 150, 156–57 (Ind.Ct.App.2005). The overriding question in deciding whether the defendant's actions were justified is "whether the defendant's conduct has been fair and reasonable under the circumstances." *Id.* at 156. In short, a legitimate reason for the defendant's actions provides the necessary justification to avoid liability. *Morgan Asset Holding Corp. v. CoBank ACB*, 736 N.E.2d 1268, 1272 (Ind.Ct.App.2000).

Turning to the merits of Bragg's claim, we first examine the relevant statutory provisions. Under Indiana Code section 36–1–2–10, a municipal corporation includes a local housing authority. And pursuant to Indiana Code section 36–7–18–5, the Mayor of the City appoints the commissioners of the housing authority. The housing authority may employ an executive director under Indiana Code section 36–7–18–10, and while the housing authority may "make and execute contracts" in accordance with Indiana Code section 36–7–18–15, a "majority vote of the commissioners present is required to authorize an action of the authority, unless a greater vote is required by the bylaws of the authority." I.C. § 36–7–18–13.

As noted above, the designated evidence shows that the Mayor did not know of the agreement between Weatherly and Bragg until March 2005. Appellee's App. p. 2–3. Both men acknowledged that the Mayor knew nothing about the contract until that time. *Id.* at 447, 677, 737. At the executive session, it became clear that Weatherly had exceeded his authority to execute the contract because the necessary vote of the Commissioners had not been taken regarding the agreement. As a consequence, the Mayor presented his concerns to MHA about the contract, including whether: 1) the Board even knew about the agreement; 2) Weatherly had the authority to enter into the contract; and 3) the contract would impact the project regarding Millennium Place in light of the approximate $2 million financial obligation that was set forth in the agreement. *Id.* at 7–8.

Thus, the designated evidence establishes that the agreement between Weatherly and Bragg may very well have violated the requirements of Indiana Code section 36–1–2–1 *et seq.*, which would have rendered the contract void ab initio. Moreover, the Mayor's concerns about the validity of the contract and whether the Board was aware of the contract and had approved the same are certainly legitimate business concerns about the potential negative implications that the proposed agreement might have on the City's $48 million Millennium Place project. Therefore, the City's actions that precipitated the repudiation of the purported contract were justified and motivated by legitimate concerns. Because Bragg has failed to establish the "absence of justification," which is a required element of tortious interference, we conclude that the trial court properly granted the City's motion for summary judgment.

The judgment of the trial court is affirmed.

FRIEDLANDER, J., and ROBB, J., concur.