Mary Alice MANLEY and Gary Manley, Appellants–Respondents,

v.

Ryan J. SHERER, M.D., and Sherer Family Medicine, P.C., Appellees–Petitioners.

No. 59A01–1104–PL–190.

Court of Appeals of Indiana.

Dec. 30, 2011.

W. Brent Gill, Ken Nunn Law Office, Bloomington, IN, Attorney for Appellants.

Edward J. Liptak, Jeremy M. Dilts, Carson Boxberger LLP, Bloomington, IN, Attorneys for Appellees.

## OPINION

BARTEAU, Senior Judge.

### STATEMENT OF THE CASE

Respondents–Appellants Mary Alice Manley and Gary Manley appeal the trial court's grant of summary judgment to Petitioners–Appellees Ryan J. Sherer, M.D., and Sherer Family Medicine, P.C. (collectively, "Sherer"). We reverse and remand.

## ISSUE

The Manleys raise two issues, which we consolidate and restate as: whether the trial court erred by granting Sherer's motion for summary judgment.

## FACTS AND PROCEDURAL HISTORY

On November 27, 2006, Mary Manley was involved in a head-on automobile collision with Kimberly Zehr. Zehr had lost consciousness while driving due to a medical conditions and medications prescribed by her physician, Sherer. Sherer had last treated Zehr on November 21, 2006. Mary Manley suffered permanent debilitating injuries as a result of the accident, and Gary Manley experienced a loss of spousal consortium.

The Manleys sued Zehr. That lawsuit was subsequently settled, and the terms of the settlement are not provided in the record. On November 25, 2008, the Manleys filed a proposed complaint against Sherer with the Indiana Department of Insurance. On July 30, 2010, Sherer filed with the trial court a Motion for Preliminary Determination of Law and for Summary Judgment. The Manleys responded to Sherer's Motion, and Sherer filed a reply. The trial court held a hearing on Sherer's Motion. Subsequently, the trial court granted summary judgment to Sherer on all of the Manleys' claims and directed the entry of judgment in favor of Sherer. This appeal followed.

## DISCUSSION AND DECISION

 We review an appeal from summary judgment de novo. *Eads v. Cmty. Hosp.*, 932 N.E.2d 1239, 1243 (Ind.2010). Summary judgment is proper when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). All facts established by the designated evidence and inferences therefrom are to be construed in favor of the nonmoving party. *Eads*, 932 N.E.2d at 1243. We will affirm the trial court's grant of summary judgment if it is sustainable on any theory or basis in the record. *Price v. Kuchaes*, 950 N.E.2d 1218, 1226 (Ind.Ct.App.2011), *trans. denied.* A defendant who asserts an affirmative statute of limitations defense must establish that the action was commenced after the limitation period has run. *Eads*, 932 N.E.2d at 1243. The burden then shifts to the plaintiff to show a material fact that precludes summary judgment. *Id.*

In this case, the Manleys alleged that Sherer had been negligent in his treatment of Zehr by failing to warn Zehr not to drive. As a result, the Manleys conclude, Zehr drove despite her medical conditions and the medications prescribed by Sherer, which caused Zehr's collision with Mary Manley and the resulting injuries. In response, Sherer claims that the Manleys' proposed complaint was untimely filed and that the medical malpractice claim is without merit.

 The Indiana Medical Malpractice Act sets forth a two year statute of limitations for claims by victims of alleged medical malpractice, as follows:

A claim, whether in contract or tort, may not be brought against a health care provider based upon professional services or health care that was provided or that should have been provided unless the claim is filed within two (2) years after the date of the alleged act, omission, or neglect, except that a minor less than six (6) years of age has until the minor's eighth birthday to file.

Ind.Code § 34–18–7–1(b) (1998). This statute is occurrence-based and differs from statutes of limitation that leave the period to assert a claim open for a fixed number of years after the claim accrues,

which often requires that the claim be discovered. *Herron v. Anigbo*, 897 N.E.2d 444, 448 (Ind.2008). The occurrence-based statute of limitations set forth in Indiana Code section 34–18–7–1(b) is constitutional on its face. *Id.* Nevertheless, the statute does not explicitly address circumstances where medical malpractice is not discovered until after the malpractice has occurred. In those circumstances, our Supreme Court has outlined the following methodology:

> Initially, a court must determine the date the alleged malpractice occurred and determine the discovery date—the date when the claimant discovered the alleged malpractice and resulting injury, or possessed enough information that would have led a reasonably diligent person to make such discovery. If the discovery date is more than two years beyond the date the malpractice occurred, the claimant has two years after discovery within which to initiate a malpractice action. But if the discovery date is within two years following the occurrence of the alleged malpractice, the statutory limitation period applies and the action must be initiated before the period expires, unless it is not reasonably possible for the claimant to present the claim in the time remaining after discovery and before the end of the statutory period.

*Booth v. Wiley*, 839 N.E.2d 1168, 1172 (Ind.2005). Factual disputes relating to the running of the limitations period, such as the date on which the plaintiff first learns of the injury, are to be resolved by the trier of fact. *Herron*, 897 N.E.2d at 452.

■ Pursuant to *Booth*, we must first determine whether the Manleys discovered Sherer's alleged malpractice within the two-year statute of limitations. Sherer last treated Zehr on November 21, 2006.

That was the last opportunity for Sherer to have warned Zehr not to drive. Therefore, the two-year time period set forth in Indiana Code section 34–18–7–1(b) began to run on that date and, in the absence of intervening factors, would have expired on November 21, 2008.

Zehr and Mary Manley's collision occurred on November 27, 2006. At the scene of the accident, Manley heard Zehr say "that [she] should not be driving because of her medical condition." Appellants' App. p. 24. Construing all facts in favor of the nonmovants, the circumstances surrounding the accident were sufficient to lead a reasonably diligent person to discover Sherer's alleged malpractice. The Manleys were cognizant of Mary Manley's injuries and had the opportunity to investigate any claims arising from the accident. Furthermore, the Manleys hired counsel and filed suit against Zehr. Thus, the Manleys possessed sufficient information on November 27, 2006 to allow a reasonably diligent person to discover Sherer's alleged malpractice.

■ The next step is to determine whether it was reasonably possible for the Manleys to file their claims in the time remaining after their discovery of the alleged malpractice and before the end of the two-year period. *See Booth*, 839 N.E.2d at 1172. The Manleys discovered evidence of Sherer's alleged malpractice on November 27, 2006, well before the two-year statute of limitations would have expired. In addition, the Manleys were represented by counsel during some or all of this period, because they were suing Zehr. During their lawsuit against Zehr, they submitted third-party discovery requests to Sherer and received his treatment records on June 12, 2007, which left ample time to file suit before the two-year period expired. We conclude that it was reasonably possible for the Manleys to file suit

before the end of the statute of limitations period on November 21, 2008. *See Moyer v. Three Unnamed Physicians*, 845 N.E.2d 252, 260 (Ind.Ct.App.2006) (determining that it was reasonably possible for the patient to have filed suit in the six and one-half months remaining in the statute of limitations period after discovering the doctor's malpractice). Thus, the Manleys' November 25, 2008 proposed complaint was filed outside of the statutory two-year period.

 The Manleys contend that their complaint is saved by the doctrine of continuing wrong.[1] The doctrine of continuing wrong applies where an entire course of conduct combines to produce an injury. *Garneau v. Bush*, 838 N.E.2d 1134, 1143 (Ind.Ct.App.2005), *trans. denied*. In order to apply the doctrine, the plaintiff must demonstrate that the alleged injury-producing conduct was of a continuous nature. *Id.* When this doctrine applies, the statutory limitations period begins to run at the end of the continuing wrongful act. *Id.*

In *Garneau*, Bush installed an artificial left hip for Garneau. The model Bush used was obsolete and no longer medically appropriate. Over the next six months, Garneau experienced continuing hip pain and repeated dislocations of the artificial hip while under Bush's care. Bush prescribed pain medications for Garneau's symptoms, although her symptoms were actually caused by the obsolete artificial hip. Bush eventually referred Garneau to an orthopedic surgeon, who replaced the artificial hip with a newer, more modern model. Garneau filed a proposed complaint against Bush. Bush moved for summary judgment, and the trial court granted his motion. On appeal, this Court determined that Garneau was aware of Bush's malpractice and could have filed a complaint within the two-year statute of limitations period but did not. Nevertheless, this Court concluded that there was a genuine issue of material fact as to whether the statute of limitations was tolled by the doctrine of continuing wrong. Bush installed an obsolete prosthesis, and he subsequently failed to recommend revision and instead treated Garneau with pain medication. Consequently, the statute of limitations was extended, and Bush was not entitled to summary judgment on that basis.

In this case, Sherer saw Zehr several times per month in the months leading up to the accident. At an appointment on August 9, 2006, Sherer advised Zehr to "watch" her driving, but he did not advise her during that appointment or any subsequent appointment that it was absolutely unsafe for her to drive. Appellants' App. p. 114. Thus, although Sherer was aware of Zehr's inability to drive safely, he continuously failed to advise her to avoid driving. There is a dispute of fact as to whether Sherer's failure to warn was a continuing wrong, at least until the accident occurred on November 27, 2006. Under these circumstances, as in *Garneau*, the doctrine of continuing wrong, if applicable, would toll the statute of limitations until at least November 27, 2008. Under those circumstances, the Manleys' November 25, 2008 proposed complaint would be timely filed. We conclude that Sherer is not entitled to summary judgment based on the statute of limitations. The trier of fact must determine whether the doctrine of continuing wrong applies.

 Next, the parties dispute whether summary judgment is appropriate

---

1. Sherer argues that the Manleys' claim of continuing wrong is waived because they did not present it to the trial court. We disagree. The Manleys argued the doctrine of continuing wrong during the trial court's summary judgment hearing.

on the merits of Mary Manley's medical malpractice claim.[2] To prevail on a medical malpractice claim, a plaintiff must prove: (1) the physician owed a duty to the plaintiff; (2) the physician breached that duty; and (3) the breach proximately caused the plaintiff's injuries.[3] *Cutter v. Herbst,* 945 N.E.2d 240, 247 (Ind.Ct.App. 2011). The breach of duty and proximate cause elements of a negligence claim are particularly fact-sensitive and rarely suitable for resolution on summary judgment. *Price,* 950 N.E.2d at 1235.

 We begin with the element of duty. The existence of duty in a negligence case is a question of law appropriate for appellate determination. *Cram v. Howell,* 680 N.E.2d 1096, 1097 (Ind.1997). To determine whether the defendant physician owed a duty of care to a third-party victim of a patient's misconduct, we consider three factors: (1) the relationship between the parties; (2) the reasonable foreseeability of harm to the person who was injured; and (3) public policy concerns. *Id.* These three factors are used in a balancing approach, not as three distinct and necessary elements. *Id.* The application of this balancing test is necessarily case-specific. *Id.*

In *Cram,* Dr. Howell treated a patient with certain medications at his office and observed the patient lose consciousness. Despite his patient's loss of consciousness, Dr. Howell did not warn the patient against driving. The patient drove away from the office, lost consciousness, and collided with Cram, killing him. The trial court dismissed the complaint, determining that Dr. Howell did not owe a duty of care to Cram. On appeal, our Supreme Court applied the three-part balancing test discussed above. Dr. Howell had no relationship with Cram, but it was reasonably foreseeable that the patient, under the influence of medications, would injure third persons while driving. Furthermore, public policy concerns weighed in favor of Cram's estate because the imposition of the legal duty of care would not substantially impinge upon Dr. Howell's treatment of his patient. Consequently, our Supreme Court concluded that Dr. Howell "owed a duty of care to take reasonable precautions in monitoring, releasing, and warning his patient for the protection of unknown third persons potentially jeopardized by the patient's driving upon leaving the physician's office." *Id.* at 1098.

In this case, Sherer had no relationship with the Manleys. However, as in *Cram,* it was reasonably foreseeable that Zehr, with her medical conditions and under medications prescribed by Sherer, was at risk of losing consciousness while driving and posed a danger to third persons. Furthermore, public policy considerations weigh in favor of imposing a duty to warn upon Sherer. Rather than impinge upon

2. Sherer contends that the Manleys have waived any argument on the merits of the medical malpractice claim because they failed to present argument to the trial court on that issue. We disagree. The Manleys' response to Sherer's motion for summary judgment explicitly addressed the question of causation and therefore addressed the merits of the medical malpractice claim.

3. The Manleys contend that the trial court may have, in the course of considering whether to grant Sherer's motion for summary judgment, addressed whether Sherer's alleged

malpractice caused the Manleys' damages. The Manleys argue that the trial court's possible consideration of causation would be inappropriate because causation is a matter reserved for the medical malpractice review panel by statute. However, the Manleys did not present this contention to the trial court, so it is waived. *See Cavens v. Zaberdac,* 849 N.E.2d 526, 533 (Ind.2006) (A party must "show that it gave the trial court a bona fide opportunity to pass upon the merits of the claim before seeking an opinion on appeal.").

Sherer's treatment of Zehr, imposition of a duty to warn can only benefit Zehr and similarly-situated patients, as well as third parties who may encounter such patients on the road. Following our Supreme Court's precedent, we conclude that Sherer owed a duty of care to take reasonable precautions in warning Zehr against driving.

■■ Next, we turn to the question of whether Sherer breached his duty to Mary Manley by failing to warn Zehr not to drive. On August 9, 2006, several months before the accident, Sherer cautioned Zehr to "take time off of work and watch driving." Appellants' App. p. 114. However, during that appointment and several subsequent appointments, Sherer did not warn Zehr to stop driving altogether. Thus, there is a dispute of fact on the element of breach of duty, and Sherer is not entitled to summary judgment as a matter of law on that element.

■■■ Finally, we turn to the element of proximate cause. Proximate cause has two aspects. The first aspect—causation in fact—is established if the plaintiff can show that the injury would not have occurred without the defendant's negligent act or omission. *Perez v. Bakel*, 862 N.E.2d 289, 293 (Ind.Ct.App.2007). The second component of proximate cause is the scope of liability, which turns largely on whether the injury is a natural and probable consequence that in light of the circumstances should have been foreseen or anticipated. *Id.*

Sherer insists that he did not cause the accident by failing to warn Zehr not to drive because Zehr already was aware of her inability to drive but drove regardless of the risk. Zehr admitted at the scene of the accident that she had medical conditions and should not have been driving. Thus, Sherer argues, even if he had warned Zehr, it would have been futile.

Viewing the facts in the light most favorable to the Manleys, we disagree. After the accident, Sherer sent a letter to the Orange County Prosecutor discussing Zehr's medical history. He stated, "[Zehr] has always had a history with me of appropriately taking her prescribed medications." Appellants' App. p. 125. Based on Sherer's statement to the prosecutor, one may reasonably infer that Zehr would have obeyed Sherer if he had warned her not to drive due to her medical conditions and her prescriptions. Thus, there is a dispute of fact as to whether Mary Manley's injuries would have occurred but for Sherer's failure to warn Zehr. Furthermore, the injuries were a foreseeable consequence of Zehr's driving, absent a warning from Sherer. For these reasons, there is a dispute of material fact as to proximate causation. *See Summit Bank v. Panos*, 570 N.E.2d 960, 969 (Ind.Ct.App.1991) (determining that summary judgment was inappropriate on the plaintiff's medical malpractice claim for failure to warn because there were disputes of fact as to whether a warning by the doctor to the patient would have prevented the victim's death), *trans. denied, overruled in part on other grounds by Vergara v. Doan*, 593 N.E.2d 185, 187 (Ind.1992).

Sherer cites *Spar v. Cha*, 907 N.E.2d 974 (Ind.2009), but that case is factually inapposite. In that case, Spar sued Cha for medical malpractice for complications arising from an abdominal surgery. Among other claims, Spar alleged that Cha failed to properly apprise her of the risks of such surgery. However, Spar had previously undergone abdominal surgeries and had been advised of the risks of such procedures. Our Supreme Court determined that the prior advisements were relevant to Spar's medical malpractice claim and that the trial court did not err by admitting them. *Id.* at 984–85.

By contrast, the current case does not concern the admission of evidence but rather the grant of a motion for summary judgment. Furthermore, although Spar had been previously advised of the risks of the procedure she underwent, there is no evidence in this case that Sherer or any other doctor had advised Zehr to stop driving due to her medical conditions and her prescribed medications. Under these circumstances, summary judgment is inappropriate on the merits of the Manleys' claims.

## CONCLUSION

For the reasons stated above, we reverse the judgment of the trial court and remand for further proceedings not inconsistent with this opinion.

Reversed and remanded.

DARDEN, J., and CRONE, J., concur.