## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEYS FOR APPELLANT

Henry J. Price
Ronald J. Waicukauski
Carol Nemeth Joven
Brad A. Catlin
Price Waicukauski & Riley, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

John W. Treece
Sidley Austin LLP
Chicago, Illinois

Patrick D. Murphy
Murphy Rice, LLP
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gumwood HP Shopping Partners, L.P., <br><br>*Appellant-Plaintiff,* <br><br>v. <br><br>Simon Property Group, Inc., <br><br>*Appellee-Defendant* | June 25, 2015 <br><br> Court of Appeals Case No. 71A05-1408-CT-397 <br><br> Appeal from the St. Joseph Superior Court <br><br> The Honorable Margot F. Reagan, Judge <br><br> Case No. 71D04-1006-CT-117 |

**Crone, Judge.**

## Case Summary

[1]     Gumwood HP Shopping Partners, L.P. ("Gumwood"), and Simon Property

Group, Inc. ("Simon"), owned competing shopping malls in Mishawaka.

Gumwood negotiated with Ann Taylor Stores Corporation ("Ann Taylor"), which operated an Ann Taylor Store in Simon's mall, to open an Ann Taylor LOFT store in its mall. Ann Taylor signed a lease with Gumwood in June 2006. According to Gumwood, Simon used anticompetitive tactics to pressure Ann Taylor not to open a store in Gumwood's mall. Shortly after the signing, Ann Taylor told Gumwood that it wanted to rescind the lease. Gumwood refused and negotiated an amendment to the lease in August 2006. Later that month, Ann Taylor took possession of the leased premises and began constructing the store. Simon again pressured Ann Taylor not to open the store, and within a week Ann Taylor abandoned the premises, never to return. In April 2007, under pressure from Simon, Ann Taylor refused to sign a second amendment to the lease. And in June 2008, Gumwood learned that Ann Taylor would be opening a LOFT store in Simon's mall.

[2] In April 2010, Gumwood filed a complaint against Simon alleging tortious interference with a contract and violations of state antitrust statutes. Simon filed a motion to dismiss for failure to state a claim, asserting in relevant part that the tortious interference claim was barred by the two-year statute of limitations. The trial court granted Simon's motion in December 2010. Over one year later, in March 2012, Gumwood filed a motion to reconsider dismissal and motion for leave to file an amended complaint, in which it argued for the first time that the continuing wrong doctrine should apply to the tortious interference claim and thus it was timely filed in April 2010. The trial court denied both motions and ultimately entered final judgment in Simon's favor.

On appeal, Gumwood contends that the trial court erred in granting Simon's motion to dismiss and denying its motion to amend. We conclude that Gumwood should have known that it suffered an injury as a result of Simon's conduct by at least April 2007, more than two years before it filed its original complaint, and therefore affirm the grant of Simon's motion to dismiss. We further conclude that Gumwood's motion to amend was both unduly delayed and futile and therefore affirm the denial of that motion.

## Facts and Procedural History

The relevant facts as alleged in Gumwood's original complaint are as follows. Gumwood and Simon owned competing shopping malls in Mishawaka. In 2005, Gumwood began negotiating with Ann Taylor, which operated an Ann Taylor Store in Simon's University Park Mall, to open an Ann Taylor LOFT store in Gumwood's Heritage Square. According to Gumwood's complaint, securing certain "key tenants" such as LOFT, Brooks Brothers, Eddie Bauer, and Chico's "is important to attract other potential tenants and they generally insist on a provision in their lease that requires the presence of certain co-tenants or types of co-tenants." Appellant's App. at 30, 31.[1] "Such co-tenancy provisions are common because the presence of a select mix of tenants will have the effect of attracting more customers." *Id*. at 31. "If a co-tenancy provision is not satisfied, the lease will not be binding on the tenant or will be binding only

---

[1] The covers of Gumwood's appendix volumes do not indicate which pages each volume contains, in contravention of Form 51-1 of the Indiana Appellate Rules.

at a reduced rent." *Id*. LOFT was a required cotenant of some of the other potential tenants with whom Gumwood was negotiating. On June 14, 2006, Ann Taylor signed a lease with Gumwood that contained its own cotenancy requirements.[2]

[5] On June 25, 2006, a local newspaper published an article stating that Ann Taylor would be opening a LOFT store in Heritage Square. When Simon discovered this, it used anticompetitive tactics to pressure Ann Taylor not to open the store. On June 28, 2006, Ann Taylor told Gumwood that it wanted to rescind the lease. Gumwood refused but agreed to renegotiate the lease.

[6] In August 2006, Ann Taylor and Gumwood executed an amendment to the lease. On August 16, 2006, Ann Taylor took possession of the leased premises and began constructing the store. Simon again pressured Ann Taylor not to open the store. By August 23, 2006, Ann Taylor told its contractor to stop construction and abandoned the premises, never to return.

---

[2] Gumwood did not attach a copy of the lease to its complaint. In its reply to Gumwood's response to its motion to dismiss, Simon argued that Gumwood should have done so pursuant to Indiana Trial Rule 9.2, and it attached a copy of the lease and the first lease amendment to its reply. *See* Ind. Trial Rule 9.2(A) ("When any pleading allowed by these rules is founded on a written instrument, the original, or a copy thereof, must be included in or filed with the pleading."). In its surreply, Gumwood argued that it was not required to attach a copy of the lease because the complaint alleged a tort claim. Gumwood cautioned the trial court that it should not consider the documents in ruling on Simon's motion to dismiss and that, if it did, the motion should be treated as a motion for summary judgment. *See* Ind. Trial Rule 12(B) ("If, on a motion … to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."). There is no indication that the trial court considered the documents in making its ruling, and the parties do not address the issue in their appellate briefs. Both documents were included in Gumwood's appellant's appendix; consistent with our standard of review for a ruling on a motion to dismiss, we will not consider them on appeal.

[7] In April 2007, Ann Taylor initiated another round of negotiations with Gumwood, which led to the drafting of a second amendment to the lease. Simon pressured Ann Taylor not to sign the amendment. The next day, Ann Taylor notified Gumwood that it would not sign the amendment.

[8] Further negotiations between Ann Taylor and Gumwood occurred in 2008. On June 22, 2008, a local newspaper published an article stating that a LOFT store would be opening in University Park Mall. According to Gumwood, this was when it first became aware that Ann Taylor had made a final decision not to open a LOFT store in Heritage Square.

[9] On April 19, 2010, Gumwood filed a three-count complaint against Simon. Count I alleged that Simon tortiously interfered with Gumwood's lease with Ann Taylor "by inducing Ann Taylor to breach its lease with Gumwood and by interfering with Gumwood's attempts to satisfy the lease's co-tenancy requirements." *Id*. at 39. Gumwood alleged that Simon's conduct had resulted in cotenancy provisions of other leases not being met and that it had "suffered damages, in the form of lost (or reduced) rents and diminution in value of the Heritage Square property as a result of Simon's unlawful conduct." *Id*. Counts II and III alleged that Simon violated state antitrust statutes.

[10] In June 2010, Simon filed a motion to dismiss Gumwood's complaint for failure to state a claim under Indiana Trial Rule 12(B)(6), asserting in pertinent part that Count I was barred by the two-year statute of limitations. In

December 2010, the trial court granted Simon's motion as to Count I and denied the motion as to Counts II and III.

[11] Also in December 2010, the trial court entered an agreed scheduling order setting a deadline of February 15, 2011, for amended pleadings. The parties conducted further discovery on the antitrust claims. At the end of May 2011, Gumwood filed a motion for leave to file a first amended complaint, in which it sought to eliminate the dismissed tortious interference claim; Gumwood later withdrew this motion. In June 2011, Gumwood filed an antitrust complaint against Simon in federal district court; that litigation is ongoing.

[12] In March 2012, over a year after the tortious interference claim was dismissed, Gumwood filed a motion to reconsider dismissal and motion for leave to file a second amended complaint, in which it argued for the first time that the continuing wrong doctrine applied to the tortious interference claim and thus it was timely filed in April 2010. *See, e.g.*, *C & E Corp. v. Ramco Indus., Inc.*, 717 N.E.2d 642, 644 (Ind. Ct. App. 1999) ("[W]hen an entire course of conduct combines to produce an injury, the conduct may constitute a continuing wrong so as to delay the running of the statute of limitations. Under this theory, the statutory period commences at the end of the continuing wrongful act.") (citation omitted). In August 2012, the trial court denied Gumwood's motions as they related to the tortious interference claim. In July 2014, the parties filed a stipulation of dismissal of Gumwood's state antitrust claims, and the trial court issued an order dismissing those claims and entering final judgment in Simon's favor. This appeal ensued. Additional facts will be provided below.

# Discussion and Decision

## Section 1 – The trial court did not err in dismissing Gumwood's tortious interference claim as untimely.

Gumwood first contends that the trial court erred in dismissing its tortious interference claim. "The standard of review on appeal of a trial court's grant of a motion to dismiss for the failure to state a claim is de novo and requires no deference to the trial court's decision." *Shi v. Yi*, 921 N.E.2d 31, 36 (Ind. Ct. App. 2010). A ruling on such a motion turns only on the legal sufficiency of a claim and does not require factual determinations. *Id.* at 36-37. "A court should accept as true the facts alleged in the complaint, and should not only consider the pleadings in the light most favorable to the plaintiff, but also draw every reasonable inference in favor of the nonmoving party." *Id.* at 37. The court need not accept as true conclusory, nonfactual assertions or legal conclusions. *Id.* "If a complaint states a set of facts that, even if true, would not support the relief requested, we will affirm the dismissal." *Long v. Biomet, Inc.*, 901 N.E.2d 37, 40 (Ind. Ct. App. 2009). "[W]e may affirm the grant of a motion to dismiss if it is sustainable on any theory." *Id.*

The elements of tortious interference with a contract are "(1) the existence of a valid and enforceable contract; (2) the defendant's knowledge of the existence of the contract; (3) the defendant's intentional inducement of the breach of contract; (4) the absence of justification; and (5) damages resulting from the defendant's wrongful inducement of the breach." *Bragg v. City of Muncie*, 930 N.E.2d 1144, 1147 (Ind. Ct. App. 2010). A tortious interference claim has a

two-year statute of limitations. Ind. Code § 34-11-2-4. "[T]he general purpose of statutes of limitations is to encourage the prompt presentation of claims and to spare the courts from litigation of stale claims." *Mercantile Nat'l Bank of Hammond v. Underwood*, 906 N.E.2d 881, 887 (Ind. Ct. App. 2009), *trans. denied*.

> Under Indiana's discovery rule, a cause of action accrues, and the limitation period begins to run, when a claimant knows or in the exercise of ordinary diligence should have known of the injury. The determination of when a cause of action accrues is generally a question of law. For an action to accrue, it is not necessary that the full extent of the damage be known or even ascertainable, but only that some ascertainable damage has occurred.

*Cooper Indus., LLC v. City of S. Bend*, 899 N.E.2d 1274, 1280 (Ind. 2009) (citations omitted); *see also Perryman v. Motorist Mut. Ins. Co.*, 846 N.E.2d 683, 689 (Ind. Ct. App. 2006) ("[T]he application of the discovery rule does not mandate that plaintiffs know with precision the legal injury that has been suffered, but merely anticipates that a plaintiff be possessed of sufficient information to cause him to inquire further in order to determine whether a legal wrong has occurred.").

In its order granting Simon's motion to dismiss, the trial court concluded, "At least by April 2007, Gumwood should have exercised reasonable diligence to discover whether tortious acts had caused Ann Taylor's decision to abandon the project, after one year of on and off negotiations." Appellant's App. at 16

(emphasis omitted).[3] We agree. Ann Taylor asked to rescind the original lease within a few days of signing it in June 2006, which should have raised suspicions on Gumwood's part. Two months later, and only one week after taking possession, Ann Taylor abandoned the premises and never returned, which resulted in injury to Gumwood in the form of lost or reduced rents and should have set off alarm bells at its corporate headquarters. And then in April 2007, Ann Taylor notified Gumwood that it would not sign the second amendment to the lease, which should have heightened Gumwood's suspicions even further.

[16] The full extent of the damages may not have been immediately ascertainable, but by April 2007, at the latest, Gumwood possessed sufficient information to cause it to make further inquiry about whether Ann Taylor's abandonment of the premises was wrongfully induced. Gumwood did not file its complaint until April 2010, and by that time the two-year limitations period had long since expired. Consequently, we find no error in the trial court's dismissal of Gumwood's tortious interference claim.

[17] To the extent Gumwood argues that the dismissal should be reversed based on the continuing wrong doctrine, we note that Gumwood did not make this

---

[3] Gumwood takes issue with the trial court's use of the term "abandon." Appellant's Br. at 21. Given that Gumwood itself used this term in replying to Simon's motion to dismiss, we find the argument meritless. *See* Appellant's App. at 225 ("Ann Taylor first breached the lease by 'abandoning' the premises as a direct result of Simon's tortious interference."). Any distinction between abandoning the "premises" and abandoning the "project" is irrelevant for purposes of this appeal. We note that Gumwood's original complaint does not specify how or when Ann Taylor allegedly breached the lease.

argument until almost a year and a half after the dismissal was entered.[4] We agree with Simon that the argument is therefore waived. "As a general rule, a party may not present an argument or issue to an appellate court unless the party raised that argument or issue to the trial court." *GKC Ind. Theatres, Inc. v. Elk Retail Investors, LLC*, 764 N.E.2d 647, 651 (Ind. 2002). "The rule of waiver in part protects the integrity of the trial court; it cannot be found to have erred as to an issue or argument that it never had an opportunity to consider." *Id.*[5] Gumwood admits that "there is no Indiana case that specifically applies the doctrine of continuing wrong to a tortious interference claim," Appellant's Br. at 16; in fact, the only case to address the issue held that the continuing wrong doctrine was inapplicable to the plaintiff's tortious interference claim. *See C & E Corp.*, 717 N.E.2d at 644-46. Thus, there was no reason for the trial court to have been aware of the issue before Gumwood belatedly raised it in its motion to reconsider. Because the trial court never had an opportunity to consider the applicability of the continuing wrong doctrine before it ruled on Simon's motion to dismiss, we decline Gumwood's invitation to consider it on appeal.

---

[4] Gumwood does not appeal the denial of its motion to reconsider the dismissal of Count I of its original complaint.

[5] Gumwood states that "[w]aiver is a doctrine of judicial administration that a trial court has the discretion to invoke." Appellant's Reply Br. at 5. Appellate courts may also apply the doctrine. *See, e.g.*, *Bunch v. State*, 778 N.E.2d 1285, 1287 (Ind. 2002) ("In contrast to the [affirmative defense of] 'waiver' governed by [Trial] Rule 8(C), there is also a doctrine of judicial administration whereby appellate courts may sua sponte find an issue foreclosed under a variety of circumstances in which a party has failed to take the necessary steps to preserve the issue.").

## Section 2 – The trial court did not abuse its discretion in denying Gumwood's motion for leave to amend its complaint.

[18]     Gumwood also contends that the trial court erred in denying its motion for leave to amend its complaint.

> Indiana Trial Rule 15(A) provides that "[a] party may amend his pleading once as a matter of course" if within a certain time frame. "Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be given when justice so requires." [*Id.*]

*Hilliard v. Jacobs*, 927 N.E.2d 393, 398 (Ind. Ct. App. 2010), *trans. denied*. "Although amendments to pleadings are to be liberally allowed, the trial court retains broad discretion in granting or denying amendments to pleadings." *Id*. "We will reverse only upon a showing of an abuse of that discretion. An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law." *Id*. (citation omitted). "Among the factors which a trial court may consider are undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of amendment." *United of Omaha v. Hieber*, 653 N.E.2d 83, 87 (Ind. Ct. App. 1995), *trans. denied* (1996). We will affirm if there is any rational basis for the trial court's decision. *Ind. High Sch. Athletic Ass'n v. Schafer*, 598 N.E.2d 540, 555 (Ind. Ct. App. 1992), *trans. denied*.

[19]     In its motion for leave to amend, Gumwood asserted that the trial court's "prior dismissal of the tortious interference claim [was] inconsistent with the Indiana Court of Appeals' recent holding applying the doctrine of continuing wrong" in *Manley v. Sherer*, 960 N.E.2d 815 (Ind. Ct. App. 2011), *trans. granted* (2012), which did not involve a tortious interference claim. Appellant's App. at 235. Gumwood sought leave to amend its complaint "to allege additional facts obtained in discovery that would clarify that the doctrine of continuing wrong should apply here." *Id*. Those "additional facts" consist primarily of more specific details regarding Gumwood's interactions with Ann Taylor and the allegedly anticompetitive tactics that Simon used to pressure Ann Taylor not to open a store at Heritage Square, none of which occurred after February 2008.

[20]     In its order denying Gumwood's motion, the trial court noted that the tortious interference claim was dismissed in December 2010 and that no motion to reconsider or motion to correct error was filed. "Voluminous" discovery ensued, and case management conferences were held in December 2010, March 2011, and May 2011. *Id*. at 20. According to the trial court, "[t]here was no mention at any of those conferences of possible challenge to the dismissal of" the claim, and it took Gumwood fifteen and a half months after the dismissal to file its motion to reconsider and motion for leave to amend. *Id*. Simon had "asserted prejudice, given the extent of discovery conducted since Count I was dismissed" and "certainly had a reason to depend on the finality of the dismissal of Count I, based upon Gumwood's procedural conduct thereafter." *Id*. at 21. But the trial court determined that prejudice was a "weak argument"

in light of Simon's resources and that "[f]airness" may be a "more appropriate" consideration. *Id*.

[21] Ultimately, the trial court concluded that "Gumwood's unexplained substantial delay in filing its Motion is disturbing and alone convinces the Court to deny the Motion" and that, "even without the procedural considerations, the statute of limitations issue further supports the Court's ultimate decision." *Id*. The court observed that "the doctrine [of continuing wrong] is not new under Indiana law"[6] and that the Indiana Supreme Court had "granted transfer and vacated the Court of Appeals opinion" in *Manley*, 967 N.E.2d 1034 (Ind. 2012). *Id*. at 22. The court further observed that, "[p]ursuant to existing law, the 'continuing wrong' doctrine must be considered in conjunction with the 'discovery' doctrine to determine when the limitations period starts running" and that "'[t]he doctrine of continuing wrong will not prevent the statute of limitations from beginning to run when the plaintiff learns of facts which should lead to the discovery of his cause of action even if his relationship with the tortfeasor continues beyond that point.'" *Id*. (quoting *C & E Corp.*, 717 N.E.2d at 645). In other words, even assuming that the continuing wrong doctrine applied to Simon's conduct, Gumwood "was put on notice of a possible injury" by April 2007, at the latest, and thus its original complaint was untimely filed. *Id*. at 23.

---

[6] *See C & E Corp.*, 717 N.E.2d at 644 ("The doctrine of continuing wrong has been recognized by Indiana courts as early as 1928.").

[22] On appeal, Gumwood contends that its delay in filing the motion for leave to amend was not undue, attributing it to the burdens of discovery and other litigation that occurred after the trial court dismissed Count I of its original complaint. But the "new" facts in the second amended complaint merely fill in the details regarding Gumwood's relationship with Ann Taylor and Simon's alleged interference and would not support a tortious interference claim accruing less than two years before suit was filed in April 2010. The trial court was not persuaded by Gumwood's argument regarding undue delay, and neither are we.

[23] Gumwood also cites *Selvia v. Reitmeyer*, which states that "[d]elay alone is insufficient reason to deny leave to amend, prejudice must be shown." 156 Ind. App. 203, 207, 295 N.E.2d 869, 872 (1973)).[7] But here, the trial court also denied Gumwood's motion because its reliance on *Manley* was misplaced and because the continuing wrong doctrine, even if applicable, could not salvage its tortious interference claim; in other words, Gumwood's amendment was futile. Indeed, the amended complaint did not allege any relevant new facts, *Manley* did not announce any new law (and was subsequently vacated by our supreme court), and it is well settled that "the doctrine of continuing wrong will not prevent the statute of limitations from beginning to run when the plaintiff learns

---

[7] *But see Hendrickson v. Alcoa Fuels, Inc.*, 735 N.E.2d 804, 818 (Ind. Ct. App. 2000) ("The Hendricksons moved to amend their complaint for a third time almost four years after filing their original complaint and three months after Peabody and Alcoa filed summary judgment motions with respect to the Hendricksons' Second Amended Complaint. It was reasonable to assume that such delay was undue. Given the deference we must give to the trial court's decision, we cannot say that there was an abuse of discretion.").

of facts which should lead to the discovery of his cause of action even if his relationship with the tortfeasor continues beyond that point." *C & E Corp.*, 717 N.E.2d at 645. The same may be said for a tortfeasor's relationship with a third party.[8] Consequently, we find no abuse of discretion in the denial of Gumwood's motion to amend and therefore affirm the trial court in all respects.

Affirmed.

Brown, J., and Pyle, J., concur.

---

[8] Gumwood suggests that *C & E Corp.* was overruled by our supreme court's opinion in *Boggs v. Tri-State Radiology, Inc.*, 730 N.E.2d 692 (Ind. 2000), but offers no persuasive support for this theory.