

FILED

Oct 19 2018, 8:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Robert G. Zeigler
Erin E. Meyers
Zeigler, Cohen & Koch
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Robert W. York
Robert W. York & Associates
Indianapolis, Indiana

Christopher C. White
Addie L. Jones
Lewis Brisbois Bisgaard & Smith,
LLP
Dallas, Texas

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Community Hospitals of Indiana, Inc., *Appellant-Defendant,* <br><br> v. <br><br> Aspen Insurance UK Limited and Hiscox, LTD, *Appellees-Plaintiffs* | October 19, 2018 <br><br> Court of Appeals Case No. 18A-PL-69 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable James B. Osborn, Judge <br><br> Trial Court Cause No. 49D14-1204-PL-16336 |

**May, Judge.**

[1] Community Hospitals of Indiana, Inc. ("Community") appeals the grant of partial summary judgment in favor of Aspen Insurance UK Limited ("Aspen") and Hiscox, Ltd ("Hiscox") (collectively, "Insurance Companies") in which the

trial court determined the Insurance Companies' claims fell outside the procedural and substantive provisions of the Indiana Medical Malpractice Act ("IMMA"). Because it determined the IMMA did not apply, the trial court concluded Community could not claim certain affirmative defenses available only under the IMMA.

[2] Community presents three issues for our review, one of which we find dispositive: whether Insurance Companies are estopped from denying the IMMA applies to their claims. We reverse and remand.

## Facts and Procedural History[1]

[3] On May 7, 2010, David Downey,[2] a truck driver for Celadon Trucking Services, Inc. ("Celadon"), was involved in a multi-vehicle accident in Texas that resulted in the death of one driver and serious injury to that driver's wife, who was in the passenger seat of the car. The deceased's children, as well as his wife and estate, sued Celadon, and the parties settled out of court in Texas. Celadon, which is located in Indiana, is insured by Insurance Companies, and Insurance Companies paid the victims' damages on behalf of Celadon.

[4] Prior to the accident, Celadon and Community, which is also located in Indiana, contracted for qualified Community employees to complete physical

---

[1] We held oral argument on this matter on July 31, 2018, in the Indiana Court of Appeals courtroom. We thank counsel for their able advocacy.

[2] Downey passed away from unrelated causes in 2012.

examinations of Celadon truck drivers based on Department of Transportation ("DOT") requirements. Under the agreement, a qualified Community employee would determine whether a driver was medically able to drive, and then Community would communicate general information about that decision and any medical concerns observed to Celadon. The Community employee assigned to examine Downey was a nurse practitioner ("the NP").

On February 17, 2010, the NP conducted Downey's annual DOT examination. She noted Downey suffered from various medical conditions, and she suspected he also had sleep apnea. The NP certified Downey to operate a commercial motor vehicle for six months but instructed Downey to undergo a sleep study and send the results to the NP. On February 22, Downey completed the sleep study and was diagnosed with severe obstructive sleep apnea ("OSA") and prescribed a continuous positive airway pressure ("CPAP") machine. The NP attempted to call Downey the same day, but she could not hear him when she reached him via telephone. The NP did not attempt to call Downey again, and Downey did not report his diagnosis to the NP. On April 16, 2010, Downey's cardiologist sent Community a fax with the sleep study results and Downey's prescription for the CPAP machine. On April 19, the NP declared Downey was safe to drive a commercial motor vehicle.[3]

---

[3] It is unclear from the record why the NP was recertifying Downey in April, as she had just certified him to operate a commercial motor vehicle in February.

[6] The accident in this case occurred May 17, 2010, when Downey drove his truck into a line of stopped cars. At the scene of the accident, Downey prepared a written statement admitting he was distracted by a wrecked truck on the side of the road and did not see the line of stopped cars until it was too late. (*See* Appellant's App. Vol. II at 151) (Downey's account of the accident as part of his December 16, 2010, deposition). The victims of the accident sued Celadon and received a judgment of approximately $3 million. Aspen and Hiscox are Celadon's insurance companies.

[7] On April 16, 2012, Aspen filed a proposed complaint with the Indiana Department of Insurance ("IDOI") against Community, alleging

> [11.] . . . Community was negligent in failing to notify Celadon on April 16, 2010, or shortly thereafter, that Downey was suffering from a medical condition which precluded his ability to drive under FMCSA regulations. Had such results been conveyed, Celadon would have removed Downey from the operation of his vehicle and placed him on a safety hold pending successful treatment of his sleep apnea.

> 12. The failure to [sic] Community to exercise ordinary care proximately caused, in whole or in part, the injuries sustained [by the accident victims], as well as the other minor bodily injury claimants, which caused, in whole or in part, Celadon to incur over $3 million to resolve their claims.

(*Id*. at 41.) Aspen indicated in its proposed complaint to the IDOI that Community's "physicians, nurse practitioners, nurses, wellness specialists, and administrative support/medical assistants . . . qualif[ied] as health care

providers under the Indiana Medical Malpractice Act." (*Id*. at 23-4.) Aspen contemporaneously filed an action in Marion County Superior Court asserting the same facts and alleging Community[4] committed negligence and breach of contract. In the complaint before the Marion County Superior Court, Aspen indicated Community's "physicians, nurse practitioners, nurses, wellness specialists, and administrative support/medical assistants . . . qualif[ied] as health care providers under the Indiana Medical Malpractice Act." (*Id*. at 16.)

[8] Insurance Companies[5] filed an amended proposed complaint with the IDOI on May 25, 2012, and in that amended complaint stated the Community employees allegedly involved were health care providers under the IMMA. Insurance Companies filed an amended complaint with the Marion County Superior Court on May 30, 2012, and they again noted the Community employees in question were health care providers under the IMMA.

[9] On April 29, 2015, the trial court, *sua sponte*, scheduled an Indiana Trial Rule 41(E) hearing due to inactivity in the Marion County case. On May 6, 2015 the Insurance Companies filed an agreed motion to remove the Trial Rule 41(E) hearing from the docket stating Insurance Companies were "seeking damages for negligence and breach of contract arising from medical services or medically related services provided by [Community]." (*Id*. at 166.) In the motion, the

---

[4] At this time, Community was referred to only as "ABC Hospital." (Appellant's App Vol. II. at 15.)

[5] Aspen added Hiscox as a plaintiff on May 25, 2012.

Insurance Companies also explained they were awaiting the medical review panel's decision. The trial court cancelled the hearing. The same process occurred on October 13, 2015, and September 14, 2016.

[10] On October 21, 2016, the medical review panel of the IDOI issued its decision on the Insurance Companies' complaint, concluding the "conduct complained of was not a factor in the resultant damages." (Br. of Appellant at 9) (citing Appellant's App. Vol II at 154).[6] On January 17, 2017, the Insurance Companies filed a second amended complaint in the Marion County case, noting "[a]ll procedural requirements of Indiana Code section 34-18-8-4 have been completed and the Medical Review Panel has provided its Opinion." (Appellant's App. Vol. II at 44.) The Insurance Companies alleged:

> On or about April 16, 2010, a facsimile was sent to and received by [Community] which contained Downey's February 22, 2010 sleep study. At that point, based on the nurse practitioner's understanding of applicable DOT and/or FMCSA regulations, in conjunction with the results of the sleep study which diagnosed Downey as having uncontrolled sleep apnea, Downey would have been disqualified from operating a commercial motor vehicle. The results of the facsimile and accompanying sleep study were never conveyed to Celadon by [Community], and [Community] did not pull Downey's certification to drive or tell him he could not operate his vehicle until he [was] successfully treated for sleep apnea. As found by the Medical Review Panel, [Community] failed to comply with the appropriate standard of

---

[6] Neither party cites to the decision from the medical review panel, and it seems that decision is not part of the record presented to us. This citation is to Community's response to the Insurance Companies' motion for summary judgment, which was filed on October 11, 2017.

care with respect to the receipt and/or review of relevant health care information.

(*Id.* at 48.) Again, the Insurance Companies indicated the relevant Community employees qualified as health care providers under the IMMA. The Insurance Companies contended Community was negligent in not communicating to Celadon regarding Downey's condition and, had they done so, Downey would not have caused the accident in Texas. Further, the Insurance Companies asserted a claim in breach of contract regarding the contract between Celadon and Community.

[11] On March 13, 2017, Community filed a response to the Insurance Companies' second amended complaint. In its answer, Community certified it was a qualified health care provider "entitled to all rights, privileges, limitations, liability caps, defenses and immunities provided for [by the IMMA]." (*Id.* at 70.) Community further asserted: "Claims of negligence and causation raised in [Plaintiffs'] Proposed Complaint before the Indiana Department of Insurance and considered by the Medical Review Panel are the sole claims upon which the subject matter jurisdiction have been granted . . .Additionally, any claim for breach of contract is subsumed under the malpractice." (*Id.* at 70-1) (internal citations omitted) (errors in original). Finally, Community argued, as a defense to Insurance Companies' negligence and breach of contract claims: "Plaintiffs are estopped to deny that the limitations of the Medical Malpractice Act, including the liability cap, apply to the plaintiff insurance companies." (*Id.* at 71.)

[12]   On September 11, 2017, the Insurance Companies filed a motion for summary judgment. The Insurance Companies' motion for summary judgment asked the trial court to declare, as a matter of law, that Community's affirmative defenses regarding the applicability of the IMMA were unavailable. In their brief in support of their motion for summary judgment, the Insurance Companies stated:

> At its core, Plaintiffs allege that a non-medical employee of Community Hospital negligently failed to provide a facsimile transmission to a nurse practitioner so that she could take appropriate action and pull the DOT driving certification for David Downey, a Celadon driver diagnosed with sleep apnea. The administrative failure of Community Hospital's staff to relay the information about the driver's sleep apnea diagnosis to a medical provider who could take appropriate action or to Celadon was not a medical determination or exercise of medical judgment and thus, this Court should grant summary judgment on all of Defendant's affirmative defenses related to the applicability of Indiana's Medical Malpractice Act.

(*Id*. at 77.)

[13]   On October 11, 2017, Community filed a response to the Insurance Companies' motion for summary judgment, arguing the Insurance Companies were estopped from denying the applicability of the IMMA based on the doctrine of judicial estoppel; the Insurance Companies had forfeited their right to challenge the applicability of the IMMA because the Insurance Companies frequently asserted the IMMA governed of the issues before the court; and the IMMA applied to the Insurance Companies' claims "because the acts or omission at

issue are based on the provider's behavior or practices while acting in its professional capacity as a provider of medical services." (*Id*. at 160.) The trial court held a hearing on the Insurance Companies' motion for summary judgment on November 13, 2017. On January 1, 2018, the trial court entered an order granting the Insurance Companies' motion for summary judgment, concluding:

> [T]here is no genuine issue as to any material facts that the claims for negligence and breach of contract made by [Insurance Companies] against [Community] in [Insurance Companies'] January 20, 2017 Second Amended Complaint, fall outside the procedural and substantive provisions of the [IMMA], and that judgment should be entered for [Insurance Companies] and against [Community] on all of [Community's] affirmative defenses seeking to invoke the procedural and substantive provisions of the [IMMA].

(*Id*. at 13-14.) The trial court also stated, "there is no just reason for delay and the Court expressly directs entry of judgment as to less than all the issues, claims or parties, as hereinabove set forth."[7] (*Id*. at 14.)

# Discussion and Decision

We review summary judgment *de novo*, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). Drawing all

---

[7] This language certifies the order for appeal pursuant to Indiana Trial Rule 54(B), despite the fact it does not dispose of all claims between the parties.

reasonable inferences in favor of the non-moving party, we will find summary judgment appropriate if the designated evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* A fact is material if its resolution would affect the outcome of the case, and an issue is genuine if a trier of fact is required to resolve the parties' differing accounts of the truth or if the undisputed material facts support conflicting reasonable inferences. *Id.*

[15] The initial burden is on the summary judgment movant to demonstrate there is no genuine issue of fact as to a determinative issue, at which point the burden shifts to the non-movant to come forward with evidence showing there is an issue for the trier of fact. *Id.* While the non-moving party has the burden on appeal of persuading us summary judgment was erroneous, we carefully assess the trial court's decision to ensure the non-movant was not improperly denied his day in court. *Id.* Summary judgment is not a summary trial, and it is not appropriate just because the non-movant appears unlikely to prevail at trial. *Id.* at 1003-04. We "consciously err[ ] on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims." *Id.* at 1004.

[16] We have previously outlined the purpose and general requirements of the IMMA:

> Our Supreme Court has explained that the [IMMA] was a legislative response to escalating problems in the malpractice insurance industry, with physicians being fearful of exposure to

malpractice claims and, further, being unable to obtain adequate malpractice insurance. *Johnson v. St. Vincent Hospital, Inc.*, 273 Ind. 374, 379-80, 404 N.E.2d 585, 589-90 (1980).

* * * * *

The [IMMA] defines malpractice as "a tort or breach of contract based on health care or professional services that were provided, or that should have been provided, by a health care provider, to a patient." Ind. Code § 34-18-2-18. Health care is "an act or treatment performed or furnished, or that should have been performed or furnished, by a health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." Ind. Code § 34-18-2-13. A "patient" is "an individual who receives or should have received health care from a health care provider, under a contract, express or implied, and includes a person having a claim of any kind, whether derivative or otherwise, as a result of alleged malpractice on the part of a health care provider." Ind. Code § 34-18-2-22. The [IMMA] does not necessarily apply to all cases where a health care provider is a party. [*Midtown Cmty. Mental Health Ctr. v. Estate of Gahl by Gahl*,] 540 N.E.2d [1259, 1260 (Ind. Ct. App. 1989), *trans. denied*.] The [IMMA] covers "curative or salutary conduct of a health care provider acting within his or her professional capacity," i.e., it must be undertaken in the interest of or for the benefit of the patient's health. *Collins v. Thakkar*, 552 N.E.2d 507, 510 (Ind. Ct. App. 1990), *trans. denied*. The [IMMA] does not apply to conduct *unrelated* to the promotion of a patient's health or the provider's exercise of professional expertise, skill, or judgment. *Howard Reg'l Health Sys. v. Gordon*, 952 N.E.2d 182, 185 (Ind. 2011) (emphasis added); *Doe by Roe v. Madison Center Hosp.*, 652 N.E.2d 101, 103 (Ind. Ct. App. 1995), *trans. dismissed*.

When deciding whether a claim falls under the provisions of the [IMMA,] "we are guided by the substance of a claim to

determine the applicability of the Act." *Doe by Roe*, 652 N.E.2d at 104. "[T]he test to determine whether a claim sounds in medical malpractice is 'whether the claim is based on the provider's behavior or practices while acting in his professional capacity as a provider of medical services.'" *Madison Ctr., Inc. v. R.R.K.*, 853 N.E.2d 1286, 1288 (Ind. Ct. App. 2006) (quoting *Collins*, 552 N.E.2d at 511), *trans. denied*. We have observed that application of this test "has resulted in hairline distinctions between claims that sound in medical negligence and those that sound in ordinary negligence." *Anonymous Hospital [v. Doe]*, 996 N.E.2d [329,] 333 [(Ind. Ct. App. 2013)] (citing *Estate of O'Neal ex rel. Newkirk v. Bethlehem Woods Nursing & Rehab. Ctr.*, 878 N.E.2d 303, 311 (Ind. Ct. App. 2007))[, *trans. denied*]. Indeed, "'[f]or more than thirty years, claimants and courts have wrestled with the question of what activities fall within the [IMMA.]'" *Eads v. Cmty. Hosp.*, 932 N.E.2d 1239, 1244 (Ind. 2010) (quoting Judge Kirsch's dissent).

*Preferred Prof'l Ins. Co. v. West*, 23 N.E.3d 716, 727 (Ind. Ct. App. 2014), *trans. denied*. We have also noted, regarding the difference between medical and ordinary negligence claims:

> A case sounds in ordinary negligence [rather than medical negligence] where the factual issues are capable of resolution by a jury without application of the standard of care prevalent in the local medical community. By contrast, a claim falls under the [IMMA] where there is a causal connection between the conduct complained of and the nature of the patient-health care provider relationship.

*Terry v. Cmty. Health Network, Inc.*, 17 N.E.3d 389, 393 (Ind. Ct. App. 2014).

[17]    Here, Insurance Companies filed their claims with the IDOI and their claims in the trial court contemporaneously. The Insurance Companies then successfully

petitioned the trial court to hold in abeyance the claims before the trial court until the Medical Review Board issued its opinion regarding the Insurance Companies' claims under the IMMA. Four years later, after receiving an unfavorable opinion from the IMMA, the Insurance Companies argued before the trial court that the IMMA no longer applied to the claims before the trial court and that Community should be precluded from relying on their affirmative defenses related to the IMMA. The trial court agreed and granted the Insurance Companies summary judgment on the request that Community be precluded from using affirmative defenses they asserted under the IMMA. Community asserts the trial court erred when it granted summary judgment. We agree with Community.

[18] We find our holding in *West*, 23 N.E.3d at 732, to be instructive. In *West*, Crystal West sustained significant permanent injuries after a co-worker, Michael, drove a vehicle into the elevated mechanical platform on which Crystal was standing. Crystal and her husband, William West, ("the Wests") filed a complaint in St. Joseph County against certain healthcare providers of Michael, alleging the healthcare providers were negligent in treating Michael with narcotic pain medication for a cervical strain and releasing him to work. The Wests also filed a proposed claim under the IMMA with the IDOI.

[19] The Wests alleged there was a breakdown in communication between a nurse and Michael, and between the same nurse and Michael's doctor, who cleared Michael to return to work, not knowing he had been prescribed a narcotic pain reliever. The Wests then filed a motion for preliminary determination of law

with the St. Joseph County Court, asking the court to determine if the IMMA applied to their claims against Michael's healthcare providers. The trial court denied the motion; however, in a footnote the trial court stated that, had it entered a preliminary determination of law, it "would have likely ruled that the proposed complaint sounds in medical malpractice and is covered by the [IMMA]." *West*, 23 N.E.3d at 720.

[20] A month later, the Wests filed a complaint for declaratory judgment in Marion County. In that action, the Wests named the healthcare providers' insurance companies, the IDOI, and the Patients' Compensation Fund as defendants. The Wests asked the Marion County Court to determine if the IMMA applied to their claims against the healthcare providers in St. Joseph County, as the clarification of applicable law "would affect not only how and where the case would be litigated but also which insurance policies and coverage would be available to the Wests should they ultimately be successful in their claims." *Id*.

[21] After denying the insurance companies' motion to dismiss under Indiana Trial Rule 12(B)(8), the trial court considered the issue of whether the IMMA applied to the Wests' claims in St. Joseph County. Following briefing and an oral argument, the Marion County Court decided the Wests' claims were founded in common law negligence, rather than the IMMA, because there were no factual disputes regarding the dosage of narcotic pain medication given to Michael, Michael's treatment, or the appropriateness of the warnings Michael was given, which were all issues that could have been decided by a medical review panel. The Marion County Court also held the Wests did not fit the IMMA's

definition of "patient" or "a person having a claim of any kind, derivative or otherwise." Ind. Code § 34-18-2-22. The insurance companies appealed.

[22] As is relevant to this action, the insurance companies argued on appeal that the Wests were estopped from claiming the IMMA did not apply to their claims because the Wests had filed a proposed claim before the IDOI. Our court rejected that argument, noting:

> [T]he Wests simultaneously filed a complaint in the St. Joseph Circuit Court and with the IDOI, and they promptly sought a preliminary determination of law approximately two months after the filing the St. Joseph action, asking that court to find that their claims were not governed by the [IMMA.] They have consistently and thoroughly pursued that position throughout years of proceedings in multiple courts. We do not find that the Wests' decision to simultaneously file complaints in the St. Joseph Circuit Court and the IDOI, likely done to avoid any potential statute of limitations issues, is problematic or that it thereby prevented them from pursuing a determination that the [IMMA] did not apply to their claims.

*West*, 23 N.E.3d at 732.

[23] Community argues *West* is distinguishable from the facts of the case before us because, while the Wests sought clarification from the beginning of all litigation, the Insurance Companies here waited until after the medical review panel rendered its decision contrary to the Insurance Companies' interests before seeking clarification about whether the IMMA applied to the Insurance Companies' claims. Further, Community contends, *West* is inapposite because despite the Insurance Companies' reliance on its holding for the premise they

did not waive their ability to challenge the applicability of the IMMA, "the Insurance Companies consistently and repeatedly claimed to the trial court that the [IMMA] *did* apply[.]" (Br. of Appellant at 25) (emphasis in original). We agree.

Unlike in *West*, the Insurance Companies repeatedly delayed the proceedings in trial court while waiting for an opinion from the Medical Review Board. At no time did the Insurance Companies file a request for declaratory judgment or indicate in any way that they did not believe the case to be under the purview of the IMMA.[8] In fact, the Insurance Companies repeatedly represented that their claim fell under the IMMA by indicating the relevant Community employees were health care providers under the IMMA.

In *Manley v. Sherer*, 992 N.E.2d 670, 674 (Ind. 2013), our Indiana Supreme Court confronted an issue very similar to the one at issue here. In *Manley*, the Manleys filed a proposed complaint with the IDOI against Dr. Sherer, who provided care to Kimberly Zehr, the driver in an accident in which Mrs. Manley sustained injury. Dr. Sherer subsequently filed a motion for preliminary determination of law and for summary judgment with the trial

---

[8] The Insurance Companies contend Community was well-aware of the Insurance Companies' intent to challenge the applicability of the IMMA because the Insurance Companies "consistently alleged that they had been damaged in a sum not less than $3,250,000 - an amount clearly over the cap imposed by [IMMA]." (Br. of Appellees at 13.) However, as our Indiana Supreme Court noted in *Eads*, the amount of damages requested is of no consequence because "[t]o the extent there is a difference . . . to the caps on medical malpractice recovery or other procedural differences in medical malpractice cases, these are matters of law that the Hospital is equipped to evaluate itself." *Eads v. Cmty. Hosp.*, 932 N.E.2d 1239, 1247 (Ind. 2010).

court, in which Dr. Sherer alleged the Manleys' proposed complaint before the IDOI was untimely because it was filed four days after the two-year statute of limitations under the IMMA. In response, the Manleys contended that their claim fell under the doctrine of continuing wrong, such that the two-year statute of limitations imposed by the IMMA did not apply. *Manley v. Sherer*, 960 N.E.2d 815, 821 (Ind. Ct. App. 2011), *vacated by Manley v. Sherer*, 992 N.E.2d 670, 674 (Ind. 2013). Our Indiana Supreme Court rejected this argument, holding:

> We preliminarily reject the plaintiffs' claim that their action against Dr. Sherer and his medical group is not governed by the Indiana Medical Malpractice Act. The plaintiffs have treated it otherwise by filing their proposed complaint with the Department of Insurance as required by the Act. They may not now contend that the Medical Malpractice Act and its time limitation do not apply to their claim.

*Manley*, 992 N.E.2d at 674. The same is true here. The Insurance Companies cannot now, after receiving a decision from the medical review board that does not comport with their trial strategy, claim the IMMA does not apply because the issue is purely clerical.

# Conclusion

[26] The trial court erred when it granted summary judgment in favor of the Insurance Companies because, under *Manley*, they cannot proceed as if the IMMA applies to their claim and then disavow the IMMA when the Medical

Review Board renders an unfavorable decision. Like in *West*, the Insurance Companies should have, and had ample time to, file a motion for declaratory judgment early in the proceedings if they believed the IMMA did not apply. Accordingly, we reverse and remand for proceedings consistent with this opinion.

[27] Reversed and remanded.

Riley, J. and Mathias, J., concur.